807 P.2d 750

**Marlene HURST, Plaintiff–Appellant,**

v.

**The CITADEL, LTD., a/k/a The Citadel Apartments, Defendant–Appellee.**

**No. 10919.**

Court of Appeals of New Mexico.

Jan. 8, 1991.

Certiorari Denied March 12, 1991.

Bette R. Velarde, Law Offices of Bette R. Velarde, George Wright Weeth, Law Offices of George Wright Weeth, Albuquerque, for plaintiff-appellant.

Charles A. Pharris, Robert H. Clark, Keleher & McLeod, P.A., Albuquerque, for defendant-appellee.

## OPINION

ALARID, Chief Judge.

Plaintiff appeals the jury verdict in favor of defendant and the trial court's denial of her motion for new trial. The issue discussed on appeal is whether the bailiff's contact with the jury during deliberations prejudiced the plaintiff and merits a new trial. Plaintiff raised other issues on appeal; however, this issue alone is dispositive of whether the trial court erred in denying plaintiff's motion for new trial. We reverse and hold that plaintiff's motion for new trial be granted.

## FACTS

This case involves a negligence claim by plaintiff against defendant Citadel Apartments. On February 20, 1985, plaintiff went to the Citadel Apartments to look for an apartment for her parents. As plaintiff left the premises, she misstepped, fell, and suffered a severe fracture of the ankle. The jury found no negligence and returned a verdict in favor of defendant. The issue on appeal solely concerns proceedings that took place during jury deliberations.

The day following the jury's discharge, plaintiff's attorney was contacted by juror Terry Chavez. Chavez informed the attorney that during deliberations some confusion arose regarding the issue of comparative negligence. For example, Chavez informed the attorney that the initial jury vote had been 9–3 in favor of plaintiff. Following this, the jury foreman, a legal secretary, told the jurors that negligence is a black and white issue, with no room for gray. The foreman told the jurors that it was not proper to compare negligence between parties. Other jurors stated that defendant could not be held liable because it had complied with the building code and

retained competent architects and builders. Another juror related to the jury that her father had been involved in a one-vehicle accident and had been forced to take sole responsibility for his injury.

A subsequent vote was taken and the count was 10–2 in favor of defendant. At this point, Chavez requested the foreman to ask the judge to clarify the issue of comparative negligence. The foreman refused, stating that it was too late because a verdict had already been reached. Chavez then wrote a note to the judge, summoned the bailiff, and gave the note to the bailiff. The bailiff agreed with the foreman and said that if a verdict had already been reached, it was too late to submit the note to the judge. The bailiff read the note, but refused to take it to the judge.

In plaintiff's motion for new trial, the above information was set forth in the attached affidavits of juror Chavez and two other jurors. Chavez was one of the two dissenting jurors who had voted in favor of plaintiff. The other two jurors stated in their affidavits that they would have voted differently had they realized they could assess some negligence against each party.

We agree with plaintiff that the trial court erred in its denial of the motion for new trial. Specifically, we find that the bailiff's actions constituted (1) extraneous prejudicial information, and (2) a violation of the open court rule. We reverse and order that plaintiff's motion for new trial be granted.

## DISCUSSION

### 1. *Extraneous Prejudicial Information*

The general rule is that affidavits and testimony of jurors, presented after jury discharge, cannot be used to impeach the jury verdict. *Biebelle v. Norero*, 85 N.M. 182, 510 P.2d 506 (1973); *State v. Doe*, 101 N.M. 363, 683 P.2d 45 (Ct.App. 1983). However, this general rule must be considered in connection with SCRA 1986, 11–606(B), which pertains to the competency of jurors as witnesses and does permit

exceptions to the general rule. Specifically, Rule 11–606(B) provides:

**B. Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about what he would be precluded from testifying be received for these purposes.

■ In the present case, plaintiff submitted three juror affidavits to support her contention that extraneous prejudicial information was improperly brought to the jury's attention. Thus, applicable is the provision of Rule 11–606(B) that provides a juror's affidavit may be admissible "[o]n the question whether extraneous prejudicial information was improperly brought to the jury's attention."

Plaintiff submitted the juror affidavits in support of her motion for new trial. The trial court subsequently entered an order denying the motion for new trial. In addition, the order granted defendant's motion to strike the affidavits, with "the exception that to the extent the [a]ffidavits deal with conversations between the jury and the bailiff as indicating outside influence and to the extent the [a]ffidavits reflect what bearing that contact had."

A question has arisen on appeal regarding what portions of the juror affidavits can be properly considered by this court upon review. The affidavits contain communications that took place between jurors and evidence of improper statements of law made by jurors during deliberations. In addition, the affidavits show the possible effect these communications had on the jurors' votes. And finally, the affidavits reveal the bailiff's refusal to submit a jury question to the judge. It is necessary to establish which portions of the affidavits we can consider on appeal.

■ Plaintiff complains that the trial court did not adequately specify which portions of the affidavits were to be stricken. It is plaintiff's contention that the court's order is ambiguous and overbroad. We disagree. We find no lack of clarity in the court's order. The order struck the affidavits in their entirety, except to the extent that the affidavits dealt with conversations between the jury and the bailiff. All other portions of the affidavits were properly stricken and cannot be the basis for any of plaintiff's arguments in this appeal. The trial court's action was consistent with Rule 11–606(B). This provision dictates that although a juror can testify about extraneous influences, the juror cannot submit testimony as to "the effect of anything upon his or any other juror's mind or emotions as influencing him to assent or dissent from the verdict or indictment * * * in connection therewith." R. 11–606(B). *See also State v. Sena,* 105 N.M. 686, 736 P.2d 491 (1987); *Bachicha v. Lewis,* 105 N.M. 726, 737 P.2d 85 (Ct.App.1987); *State v. Doe.*

In *Duran v. Lovato,* 99 N.M. 242, 247, 656 P.2d 905, 910 (Ct.App.1982), we quoted the following, taken from Fed.R.Evid. 606, Advisory Committee Notes, 28 U.S.C.A. (1975):

"The mental operations and emotional reactions of jurors in arriving at a given result would, if allowed as a subject of inquiry, place every verdict at the mercy of jurors and invite tampering and harassment * * * As to matters other than mental operations and emotional reactions of jurors, substantial authority refuses to allow a juror to disclose irregularities which occur in the jury room, but allow his testimony as to irregularities occurring outside and allows outsiders to testify as to occurrences both inside and out * * *

[T]he central focus has been upon insulation of the manner in which the jury reached its verdict, and this protection extends to each of the components of deliberation * * *."

■ Hence, we agree with defendant that the portions of the juror affidavits that address the inner reactions and thought processes of the jurors (statements that juror votes were affected by jury discussion of negligence), juror statements made during the course of the deliberations (foreman's assertion that negligence is a black and white issue; other juror's belief that defendant could not be held liable because of compliance with building code and employment of competent architects), and changes in the actual vote counts (jury vote changed from 9–3 for plaintiff to 10–2 for defendant) are prohibited by Rule 11–606(B). Therefore, we consider only those portions of the juror affidavits that relate to (1) the bailiff's statement that it was too late to submit a question to the judge, and (2) the bailiff's subsequent refusal to submit the jury question to the judge.

Plaintiff asserts, however, that juror statements in affidavits which address the numerical vote at different stages of the deliberations should not be excluded from this court's consideration. In support of her position, plaintiff relies on the decision in *State v. Sacoman*, 107 N.M. 588, 762 P.2d 250 (1988). In *Sacoman*, "extraneous information" was interjected into the jury deliberations in the form of juror fabricated stories and personal expertise stories. In that case, the court held that the trial court did not abuse its discretion in finding the extraneous information not to be prejudicial. In reaching this conclusion, the court examined the stage that the deliberations had reached at the time the jury was exposed to the extraneous information. It was not the actual numerical vote, or any changes therein, that was relevant to the inquiry of prejudice. Rather, the key factor in *Sacoman* was whether the injection of the extraneous information occurred during a stage in deliberations when the relevant issue was yet to be decided. Thus, it was the stage of the jury deliberations, rather than any fluctuations in the actual jury count, that impacted whether the extraneous information was prejudicial. We disagree with plaintiff's contention that the portions of the juror affidavits that concern the actual votes taken and changes therein should be considered by this court. Rather, our inquiry is limited to whether the relevant issue had been resolved at the stage in deliberations in which the extraneous information was interjected.

We have now established which portions of the juror affidavits can be considered properly upon appeal. Next, we determine whether such affidavit portions reveal "extraneous information" that was improperly communicated to the jury. We note that in *Prudencio v. Gonzales*, 104 N.M. 788, 727 P.2d 553 (Ct.App.1986), this court held that a bailiff's conduct falls into an inquiry of whether extraneous prejudicial information improperly influenced the jury. We held that the bailiff's conduct in demonstrating to jurors his relationship with several of the defendants may have adversely affected the jury and, hence, warranted a new trial.

■ In the present situation, we find that the bailiff's statement to the jury that it was too late to submit a question to the judge constituted extraneous information. SCRA 1986, 1–038(F) provides the following:

> Either party may require the jury to be polled * * * asking each juror if it is his verdict; if upon such inquiry or polling, more than one of the jurors disagree thereto, the jury must be sent out again but if no such disagreement be expressed, the verdict is complete and the jury discharged from the case.

This provision reflects the general rule that there is no final verdict until the jury has been discharged. *See State v. Holloway*, 106 N.M. 161, 740 P.2d 711 (Ct.App.1987). Accordingly, the bailiff's statement to the jury was an incorrect statement of law that was improperly communicated to the jury. Therefore, we agree with plaintiff that the bailiff's communication constituted extraneous information improperly injected into the jury deliberations.

■ Once it has been determined that extraneous information reached the jury, a determination must be made of whether such improper communication was prejudicial. *State v. Gutierrez,* 78 N.M. 529, 433 P.2d 508 (Ct.App.1967). We have previously held that the injection of extraneous information creates a presumption of prejudice. *See State v. Sacoman; State v. Beal,* 48 N.M. 84, 146 P.2d 175 (1944); *Prudencio v. Gonzales; State v. Doe.*

■ Such presumption of prejudice, however, is not irrebuttable. *State v. Melton,* 102 N.M. 120, 692 P.2d 45 (Ct.App.1984); *State v. Ho'o,* 99 N.M. 140, 654 P.2d 1040 (Ct.App.1982). Rather, the burden is upon the party resisting a new trial to demonstrate that the improper communication did not have any prejudicial influential effect upon the jurors. *State v. Sacoman; Prudencio v. Gonzales; State v. Mankiller,* 104 N.M. 461, 722 P.2d 1183 (Ct.App.1986).

Although rebuttable, the presumption of prejudice is not always easily overcome. For example, in *Gonzales,* the bailiff improperly indicated to jurors his relationship to several of the defendants. In connection with the plaintiffs' motion for new trial, one juror testified that, while she thought the bailiff was trying to influence the jury, his actions had no effect upon her. The plaintiffs further stipulated that, if the remaining jurors were to be called, they, too, would testify that they had not been influenced by the bailiff. Nevertheless, this court held that the subjective and subtle nature of the bailiff's conduct may have adversely affected the jury. We affirmed the trial court's granting of the plaintiffs' motion for new trial.

■ There are instances, however, when the burden of overcoming the presumption of prejudice has been met. Relevant inquiries include how the material was received, how long it was available to the jury, the extent to which the jury discussed the material, whether they considered it before they reached a verdict or after, and, if before, at what point in the deliberations they received the material. *State v. Doe.* For example, in *Sacoman,* the court held that the extraneous information was not prejudicial. In making its decision, the court considered both that the relevant issue had already been decided and the limited degree to which such statements were discussed by the jury. In *Melton,* we held that the improper reference to dictionary definitions by some of the jurors constituted extraneous information improperly brought to the jury's attention. However, we held that such improper communication did not prejudice the defendant. In affirming the trial court's finding of no prejudice, we noted that the dictionary definitions did not vary from the usual ordinary meanings or from the meaning contained in the trial court's instructions. Thus, the presumption of prejudice can be overcome upon a showing that the improper communication was merely a restatement of an instruction already given.

■ In the present situation, we are not convinced that defendant overcame the presumption of prejudice that attaches to improperly communicated extraneous information. Defendant contends that the bailiff's improper communication was not "substantive" in nature, therefore precluding any presumption of prejudice. We disagree. The bailiff's communication that it was too late to submit a question to the judge was a misstatement of the law. Conceivably, its effect was more prejudicial than any comment on the facts or evidence of the case would have been. In the latter situation, the jury would have had its own knowledge of the case to draw from and examine. The jury would not be in a position, however, to know that the bailiff's communication was an incorrect statement of the law. Instead, it is quite plausible that the bailiff's communication stifled any further attempts by jury members to continue discussion of the disputed issues or clarify any other areas of confusion.

Defendant also argues that, had the bailiff submitted the note to the judge, the judge's response would probably have been to refer the jury back to the written instruction on comparative negligence. Even so, we find that such a response would have been more beneficial to the jury than no response at all. Nevertheless, we re-

frain from any further discussion regarding what might have happened. Such conjecture would be mere speculation that does not adequately rebut the presumption of prejudice. In that regard, we note that the judge hearing the motion in this case had not presided at the trial. *Cf. State v. Mankiller* (unauthorized communication stated what trial judge would have said).

Further, we are guided by the *Sacoman* decision in considering the stage of deliberations in which the improper communication took place. The very delivery of the message to the bailiff evidenced the intention of at least one juror to keep alive the issue of negligence. We cannot agree with defendant that the bailiff's improper communication could have no prejudicial effect.

### 2. *Open Court Rule*

█ In addition to injecting "extraneous prejudicial information" into the jury deliberations, the bailiff's conduct violated the well-established "open court rule." We have consistently applied the general rule that any communication between the judge and jury must take place in open court and in the presence of the parties and their counsel. *Hovey v. State*, 104 N.M. 667, 726 P.2d 344 (1986); *State v. Orona*, 92 N.M. 450, 589 P.2d 1041 (1979); *Amador v. Lara*, 93 N.M. 571, 603 P.2d 310 (Ct.App. 1979).

█ Plaintiff is correct in her assertion that the open court rule's applicability extends to communications by the bailiff, as well as the judge. The bailiff, as custodian of the jury, has a duty to communicate all requests made by the jury to the judge. The bailiff has no authority to refuse to communicate the jury's requests to the judge. *See Wittmeier v. Post*, 78 S.D. 520, 105 N.W.2d 65 (1960). In effect, the bailiff, acting in his capacity as a court official, serves as the alter ego of the judge. Communications by the bailiff may violate the open court rule. *See State v. Mankiller* (bailiff violated analogous Rule of Criminal Procedure when he responded to juror's request to define "on or about"); *O'Brien v. City of Seattle*, 52 Wash.2d 543, 327 P.2d 433 (1958) (bailiff violated open court rule when he communicated with jurors in response to a question about a jury instruction).

A violation of the open court rule is presumptively prejudicial. *State v. Johnson*, 105 N.M. 63, 728 P.2d 473 (Ct.App. 1986). However, we do not follow the rule that any unauthorized contact with the jury is per se prejudicial, automatically requiring a mistrial or reversal. *Amador v. Lara*. Rather, as with extraneous prejudicial information, the presumption of prejudice is rebuttable. *State v. Johnson; State v. Ho'o; State v. McClure*, 94 N.M. 440, 612 P.2d 232 (Ct.App.1980). The party resisting the new trial must show that the communication was harmless and did not affect the verdict. *State v. Johnson; State v. McClure*.

As with any unauthorized communication, the presumption of prejudice that attaches to a violation of the open court rule is not always easily overcome. In the present case, defendant must essentially meet the same burden that is required to rebut the presumption of prejudice that attaches to extraneous prejudicial information. For the same reasons as discussed in connection with extraneous prejudicial information, we find that defendant failed to adequately rebut the presumption of prejudice. We are not convinced that the violation of the open court rule did not affect the jury's verdict.

## CONCLUSION

The record supports a finding of unauthorized bailiff conduct and improper influence from which a presumption of prejudice arises. Defendant did not adequately rebut that presumption. We find that the trial court abused its discretion in denying plaintiff's motion for new trial.

For the above reasons, we reverse the trial court's decision and hold that plaintiff's motion for new trial be granted.

IT IS SO ORDERED.

HARTZ and CHAVEZ, JJ., concur.