1999-NMCA-061

980 P.2d 652

**Rhoda GOODLOE and Jeannie Goodloe Victoria, Plaintiffs–Appellants,**

v.

**Darby BOOKOUT, J.W. Bookout and Hayden Evans, Defendant–Appellees.**

No. 19267.

Court of Appeals of New Mexico.

Feb. 17, 1999.

Certiorari Denied, No. 25,659, May 4, 1999.

Marion J. Craig, III, Marion J. Craig, III, P.C., Roswell, for Appellant Rhoda Goodloe.

Tandy L. Hunt, Tandy L. Hunt, P.C., Roswell, for Appellant Jeannie Goodloe Victoria.

Neils L. Thompson, Shannon A. Parden, Madison, Harbour, Mroz & Brennan, P.C., Albuquerque, for Appellees Darby & J.W. Bookout.

Daniel J. O'Brien, John D. Webber, Daniel J. O'Brien & Associates, P.C., Albuquerque, for Appellee Hayden Evans.

*OPINION*

HARTZ, Judge.

{ 1}   Plaintiffs appeal an adverse verdict in their personal injury action. They contend that the judgment must be reversed because (1) the district court refused to permit them to recall a witness during their case in chief, (2) the district court improperly restricted cross-examination by permitting only one Plaintiff to cross-examine witnesses regarding liability, and (3) members of the jury improperly discussed the case with one another during the course of trial. We affirm. With respect to issues one and three, Plaintiffs have failed to show prejudice. As for the second claim, they failed to preserve the issue in district court.

## I. BACKGROUND

{ 2}   Plaintiff Rhoda Goodloe (Goodloe) is the mother of Plaintiff Jeannie Goodloe Victoria (Victoria). Victoria was a passenger in Goodloe's vehicle when it collided with a vehicle owned by J.W. Bookout and driven by Darby Bookout. The collision occurred as the Bookout vehicle was exiting the Goddard High School parking lot onto Country Club Road in Roswell. Defendant Hayden Evans allegedly contributed to causing the accident by negligently waving or motioning Darby Bookout to exit the parking lot.

{ 3} The complaint against Defendants was filed on behalf of both Plaintiffs by one attorney. But after the answers to the complaint alleged comparative fault by both Plaintiffs, separate counsel was obtained for Victoria.

{ 4} At trial the district court authorized an equal number of peremptory jury challenges for each Plaintiff and each Defendant. But it also stated that the interests of the two Plaintiffs were so "aligned" that only one Plaintiff would be permitted to cross-examine each witness to liability. Counsel for the two Plaintiffs divided their trial duties even beyond what was required by the court. Victoria's attorney gave the opening statement for both Plaintiffs, and each of the eight Plaintiffs' witnesses was questioned by only one of the attorneys.

{ 5} The first witness called by Plaintiffs was Sergeant Mike Greengrass, the police officer who investigated the accident and authored the police report. Although Greengrass was excused at the conclusion of his testimony, Plaintiffs attempted to recall him after Goodloe's testimony during their case in chief. In cross-examining Goodloe, defense counsel had suggested that Goodloe's statement to Greengrass differed from her trial testimony. Plaintiffs sought to recall Greengrass to rebut the suggestion. The district court rejected the request. Later, Plaintiffs recalled Greengrass as their sole rebuttal witness.

{ 6} After trial, Plaintiffs moved for a new trial on the grounds that (1) cross-examination had been restricted and (2) the jury had been contaminated by improper communications prior to deliberations. In support of the second ground, they offered an affidavit by an alternate juror which asserted that during trial several jurors had discussed the facts of the case and their opinions of the evidence. The district court denied the motion.

## II. DISCUSSION

### A. *Recall of Sergeant Greengrass*

■ { 7} Plaintiffs' first witness was Sergeant Greengrass. After he testified, he was excused. But Plaintiffs sought to recall Greengrass during their case in chief to rebut an implication raised in cross-examination of Plaintiff Goodloe that her statement to the police was inconsistent with her trial testimony. The district court denied the request. In explaining its ruling, the court stated that Plaintiffs had already had the opportunity to examine Greengrass and that Greengrass had been released from the rule excluding witnesses from the courtroom. *See* Rule 11–615 NMRA 1999. Plaintiffs contend that the district court erred because Greengrass had not been released from the exclusionary rule but had only been permitted to return to work after testifying.

■ { 8} The Bookout Defendants contend that Plaintiffs abandoned this issue by not raising it in their docketing statement. *See* Rule 12–208 NMRA 1999. They rely on *Eldorado at Santa Fe, Inc. v. Cook,* 113 N.M. 33, 38, 822 P.2d 672, 677 (Ct.App.1991). But their reliance is misplaced. The proposition set forth in *Eldorado* is no longer good law. "[O]nce an appeal has been placed on our general calendar [for full briefing], an appellant is not restricted to issues expressly set forth in the docketing statement." *Gillin v. Carrows Restaurants, Inc.,* 118 N.M. 120, 123, 879 P.2d 121, 124 (Ct.App.1994).

{ 9} Nonetheless, on the merits Defendants prevail. Even if the district court incorrectly believed that Greengrass had been released from the rule, Plaintiffs have failed to establish that the court's ruling prejudiced them. After Defendants rested, Plaintiffs called Greengrass on rebuttal, at which time he testified on the very issue for which Plaintiffs had earlier sought to recall him. Because the error, if there was error, did "not affect the substantial rights of the parties," we cannot set aside the verdict on that ground. Rule 1–061 NMRA 1999 (harmless error).

### B. *Restriction on Cross–Examination*

■ { 10} Plaintiffs argue vigorously on appeal that the district court improperly restricted their right to cross-examine witnesses. Although the two Plaintiffs had separate counsel, the district court ruled that their interests with respect to liability were

sufficiently aligned that only one attorney would be permitted to cross-examine liability witnesses.

{ 11} We note our serious reservations about the restriction on cross-examination. Although the trial judge is granted broad discretion in controlling "the mode and order of interrogating witnesses and presenting evidence," Rule 11–611(A) NMRA 1999; *see State v. Smith*, 92 N.M. 533, 539, 591 P.2d 664, 670 (1979), we believe that the judge's legitimate interest in preventing repetitious cross-examination could be achieved by less draconian measures. Nevertheless, we will not reverse the verdict in the case before us on this ground.

{ 12} The problem for Plaintiffs here is that they have not shown that they preserved the issue at trial. Their briefs on appeal cite to only one occasion in the record on which the matter arose. After Goodloe's attorney had cross-examined Darby Bookout, the first of only two witnesses called by the defense, Victoria's attorney rose to cross-examine the witness. When defense counsel objected based on the district court's prior ruling limiting cross-examination, Victoria's lawyer did not challenge the merits of the prior ruling. He claimed only that Plaintiffs had a conflict. After hearing debate on this question at a bench conference, the district court refused to permit cross-examination by Victoria's attorney. The tape recording of the bench conference is difficult to hear. But it appears that Plaintiffs did not challenge the court's ruling restricting cross-examination when their interests were aligned; and Plaintiffs have made no representations in their briefs regarding what they argued at the bench conference. Plaintiffs have the burden on appeal of establishing that they preserved an issue below. *See* Rule 12–213(A)(4) NMRA 1999. They have failed to carry that burden.

{ 13} In short, Plaintiffs have not shown that they raised a timely objection to the district court's ruling that only one Plaintiff should be permitted to cross-examine a witness when the interests of the two Plaintiffs were aligned with respect to the testimony of the witness. Raising the matter in their motion for a new trial came too late;

objections must be raised in time for the trial judge to correct the error to prevent prejudice. *See State v.. Lucero*, 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App.1986) (objections must be timely). In the absence of preservation of the question below, our scope of review is very limited. *See* Rule 12–216 NMRA 1999. In particular, in the absence of any indication that the restriction on cross-examination deprived either Plaintiff of a fair trial, we can find no fundamental error or other ground for exercising our discretion to consider the issue. *See State v. Baca*, 1997–NMSC–045, ¶ 41, 124 N.M. 55, 946 P.2d 1066 (defining fundamental error); *Hinger v. Parker & Parsley Petroleum Co.*, 120 N.M. 430, 442, 902 P.2d 1033, 1045 (Ct.App.1995).

{ 14} As for the issue that Plaintiff Victoria did preserve—the contention that Plaintiffs had conflicting interests in cross-examining Darby Bookout—Plaintiffs have not pursued the matter in their briefs on appeal. Consequently, the issue has been abandoned. *See State v. Aragon*, 109 N.M. 632, 634, 788 P.2d 932, 934 (Ct.App.1990). In addition, we note that Goodloe was given a full opportunity to cross-examine the witness (Darby Bookout) that Victoria wished to cross-examine; therefore, Goodloe has no ground to complain about restrictions on the cross-examination of Darby Bookout.

## C. *Jury Misconduct*

{ 15} The uniform jury instructions promulgated by our Supreme Court include certain admonitions to be given to the jury once it is qualified, prior to opening statements. The first of these admonitions states: "During the recesses and adjournments, while the case is in progress, you should not discuss this case with other jurors or with anyone else." UJI 13–106(1) NMRA 1999. The district court so advised the jury in this case. Other relevant admonitions given by the court were:

> You should not form an opinion or express an opinion as to any issue in this case until you have heard all of the evidence, the instructions of the court and the closing statements of the attorneys.
>
> . . .

The evidence which you will consider in this case, in order to arrive at a true verdict, consists of the testimony of the witnesses; the exhibits, if any, admitted into evidence; any facts admitted or agreed to by the attorneys as well as any facts which the court instructs you to accept as true.

UJI 13–106(5) & (7) NMRA 1999.

{ 16} Plaintiffs contend that the jury disobeyed these admonitions. On December 29, 1997, almost two months after the verdict was rendered, Paul Charo signed an affidavit swearing to the following:

1. I was selected as a juror in this matter.

2. During the course of the trial, specifically including breaks in testimony and during recesses, several jurors discussed the facts of the case, their knowledge of the streets by Goddard High School, and their judgment of the conduct of the Plaintiff, Rhoda Goodloe, and the Defendants, Bookout and Evans.

3. I was an alternate juror and did not participate in the deliberations after the jury instructions were read.

Plaintiffs attached the affidavit to their joint motion for new trial filed on the date the affidavit was executed. Plaintiffs contended that the disclosures set forth in the affidavit entitled them to a new trial. The district court denied the motion. Plaintiffs now pursue the issue on appeal.

{ 17} In response to Plaintiffs' contention, Defendants argue that the affidavit should not be considered because jurors may not testify to impeach a verdict. We disagree. A rule of evidence governs the matter. Rule 11–606(B) NMRA 1999 states:

**Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that

a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Under the rule, a juror affidavit could not ordinarily be used as evidence regarding what occurred during jury deliberations, nor could it be used as evidence of the effect of anything upon those deliberations. *See Hurst v. Citadel, Ltd.,* 111 N.M. 566, 568–70, 807 P.2d 750, 752–54 (Ct.App.1991). But this affidavit does neither. It addresses matters that occurred prior to the jury's deliberations; and it does not purport to state how those matters affected the later deliberations. Federal Rule of Evidence 606(b), whose language is identical to that in our Rule 11–606(B), has been interpreted to permit the reception of testimony by jurors regarding pre-deliberation discussions of the case. *See United States v. Bertoli,* 40 F.3d 1384, 1395–96 n. 5 (1994); *United States v. Piccarreto,* 718 F.Supp. 1088, 1092–93 (W.D.N.Y.1989). We agree with that interpretation of the language of the rule. We are aware that *Skeet v. Wilson,* 76 N.M. 697, 699–700, 417 P.2d 889, 890–91 (1966), suggests a contrary view; but that opinion predates the promulgation of Rule 11–606 by our Supreme Court.

{ 18} Thus, there was proper evidence before the district court to the effect that some jurors had improperly discussed the case among themselves prior to deliberations. The question, then, is whether this misconduct required the district court to grant a new trial. We think not.

{ 19} A new trial is required if Plaintiffs' right to a fair trial was prejudiced by jury misbehavior. *See Hurst,* 111 N.M. at 571, 807 P.2d at 755. There are two potential sources of prejudice here. First, the jurors are to reach their verdict based solely on the evidence presented to them at trial. *See* UJI 13–106(1), (7). The Charo affidavit indicates, however, that some jurors may

**332**

have imparted "their knowledge of the streets by Goddard High School" to other jurors. Second, jurors should not deliberate about the facts of the case until they have heard all the evidence and the court's instructions. *See* UJI 13–106(1), (5). *See generally* 2 Charles A. Wright, *Federal Practice and Procedure* § 486, at 718 (2d ed.1982); 1 Edward J. Devitt et al., *Federal Jury Practice and Instructions* § 5.08, at 119–20 (4th ed.1992). Again, the Charo affidavit indicates that the jurors discussed the facts prior to the conclusion of the evidentiary presentations by the parties. We address separately each of these potential sources of prejudice.

{ 20} The first concern—communication by one juror to another of knowledge regarding the streets near the high school—can be treated as an unauthorized communication to the jury. *See State v. Sacoman,* 107 N.M. 588, 590, 762 P.2d 250, 252 (1988). In keeping with the United States Supreme Court decision in *Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954), New Mexico courts have treated unauthorized communications as "presumptively prejudicial," although the presumption is not conclusive and can be rebutted. *See State v. Gutierrez,* 78 N.M. 529, 531, 433 P.2d 508, 510 (Ct.App.1967); *Hurst,* 111 N.M. at 571, 807 P.2d at 755. *But see United States v. Sylvester,* 143 F.3d 923, 933–34 (5th Cir. 1998) (suggesting that the *Remmer* presumption has been abandoned by the United States Supreme Court). Rebutting the presumption of prejudice is problematic, given that jurors cannot testify whether the improper communication influenced them. *See* Rule 11–606(B). But courts apply common sense to evaluate the likelihood of prejudice arising from the communication. Indeed, rather than stating that courts always presume prejudice, it may be more accurate to state that "the threshold question for the trial court is whether the unauthorized conduct creates a presumption of prejudice," *Prudencio v. Gonzales,* 104 N.M. 788, 789, 727 P.2d 553, 554 (Ct.App.1986), and "the issue then is whether there is a 'reasonable probability' or a likelihood that the extrinsic communications or conduct would have an effect upon the verdict or upon a typical juror," *id.* at 790, 727 P.2d at 555.

{ 21} Here, the district court could properly find that Plaintiffs' right to a fair trial was not prejudiced. Nowhere in Plaintiffs' briefs on appeal or in the pleadings below is there any suggestion by Plaintiffs regarding how they could have been prejudiced by jurors' communicating to one another "their knowledge of the streets by Goddard High School." The affidavit does not suggest that the communications among the jurors regarding those streets was in any way contrary to the trial testimony. *See State v. Melton,* 102 N.M. 120, 122–24, 692 P.2d 45, 47–49 (Ct.App.1984) (jury improperly referred to dictionary during deliberations; but no prejudice since dictionary definition was consistent with court's meaning). Nor is there any reason to believe that the layout of the streets was material to the case or that jury error on that matter could have had any impact in their determination of the fault of any of the parties. Given the population of Roswell, it would be surprising if none of the jurors was familiar with the site of the accident. Indeed, during voir dire Plaintiffs' counsel questioned the jurors extensively regarding their familiarity with the road where the accident occurred and traffic conditions there when students are dismissed for the day. In addition, Plaintiffs submitted exhibits which depicted the accident site and surrounding area. The district court acted well within the scope of its discretion in ruling on the record before it that Plaintiffs were not deprived of a fair trial by juror discussions regarding their knowledge of the streets in the vicinity of the accident. *See Prudencio,* 104 N.M. at 789, 727 P.2d at 554 (trial court has discretion in deciding whether to grant or deny a motion for a new trial).

{ 22} The jurors' premature discussion of the evidence raises distinct issues. Premature deliberations are proscribed for at least four reasons: (1) they are unfair to the defendant when they occur before the defendant has had an opportunity to present the defense case; (2) once a juror has expressed a view, the juror may be resistant to contrary evidence; (3) they are likely to involve only a subset of the jury, contrary to the goal of collective deliberations; and (4) they are conducted without the guidance of

the court's instructions. *See United States v. Resko*, 3 F.3d 684, 689 (3d Cir.1993). Nevertheless, the danger of prejudice arising from premature deliberation is significantly less than the danger arising from communication of information not in evidence at trial. As stated in *Resko*, 3 F.3d at 690:

> Despite the importance of the prohibition against all premature discussions, there is a clear doctrinal distinction between evidence of improper *intra*-jury communications and *extra*-jury influences. It is well-established that the latter pose a far more serious threat to the defendant's right to be tried by an impartial jury. It has long been recognized that when jurors are influenced by the media and other publicity, or when they engage in communications with third ·parties, these extra-record influences pose a substantial threat to the fairness of the criminal proceeding because the extraneous information completely evades the safeguards of the judicial process. In contrast, when there are premature deliberations among jurors with no allegations of external influence on the jury, the proper *process* for jury decision-making has been violated, but there is no reason to doubt that the jury based its ultimate decision only on evidence formally presented at trial.

(Citations omitted). The record here presents no reason to believe that the jury failed to reach its verdict based solely on the evidence and the district court's instructions. We also note that insofar as premature deliberations are prohibited because it is unfair to the defendant for jurors to reach conclusions without having heard the defendant's case, *see id.* at 689, it is here Plaintiffs, not Defendants, who are complaining of premature deliberations.

{ 23} To be sure, if the court learns during trial that such premature discussions have taken place, it should conduct an inquiry to determine whether the fairness of the trial has been threatened and then take appropriate measures. *See id.* at 690–91. But once the trial has concluded, prophylactic measures are unavailable. The party complaining of premature deliberations must either establish prejudice or at least request the court to conduct a further inquiry. There is no indication of any such request by Plaintiffs in this case. In general, courts have resisted ordering new trials when presented with post-trial disclosures of premature jury deliberations. *See United States v. Klee*, 494 F.2d 394, 396 (9th Cir.1974); *Piccarreto*, 718 F.Supp. at 1092–93; *State v. Newsome*, 238 Conn. 588, 682 A.2d 972, 990–94 (1996); *People v. Rohrer*, 174 Mich.App. 732, 436 N.W.2d 743, 746 (1989). *See generally* Dale R. Agthe, Annotation, *Propriety and Effect of Jurors' Discussion of Evidence Among Themselves Before Final Submission of Criminal Case*, 21 A.L.R.4th 444 (1983). The district court had discretion regarding how to deal with premature jury deliberations. *See Resko*, 3 F.3d at 690. On the record before it here, it did not abuse its discretion in refusing to grant a new trial.

## III. *CONCLUSION*

{ 24} For the above reasons, we affirm the judgment below.

{ 25} **IT IS SO ORDERED.**

DONNELLY and BOSSON, JJ., concur.