**Certiorari Denied, September 21, 2011, No. 33,159**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-104**

**Filing Date:  July 21, 2011**

**Docket No. 29,778**

**STORM DITCH, a community ditch,**

      **Plaintiff-Appellant,**

**v.**

**JOHN R. D'ANTONIO, JR.,**
**New Mexico State Engineer,**

      **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**James Waylon Counts, District Judge**

George Chandler Law
George Chandler
Los Alamos, NM

for Appellant

DL Sanders, Chief Counsel
Martha C. Franks, Special Assistant Attorney General
Santa Fe, NM

for Appellee

H. John Underwood, Ltd.
Zach Cook
Ruidoso, NM

for Ruidoso Downs

**OPINION**

1

**FRY, Judge.**

**{1}** Two years after the time for filing a protest had expired, Storm Ditch, a community acequia, tried to protest an application filed with the State Engineer by the estate of Alfred McTeigue (the Estate) and the City of Ruidoso Downs (together, the Applicants) for the transfer of the Estate's water rights from the acequia. We must decide whether the Applicants gave proper notice of their application to Storm Ditch. We conclude that notice by publication, as required by statute, was sufficient and proper notice to Storm Ditch and that Storm Ditch's protest came too late. As a result, we affirm the denial of Storm Ditch's motions to intervene in the application process, its request for a hearing before the State Engineer, and its petition for mandamus.

**BACKGROUND**

**{2}** In December 2004, the Applicants filed an application with the State Engineer to transfer water rights owned by the Estate from Storm Ditch to the City of Ruidoso Downs (the City). If a proposed transfer of water rights moves water into or out of an acequia, the transfer cannot be approved unless the applicant complies with any requirements adopted by the acequia, and the applicant must submit documentary evidence of such compliance along with the application. *See* NMSA 1978, § 72-5-24.1(A), (B) (2003). If an acequia has not adopted any requirements for approval, the applicant must submit an affidavit from the commissioners of the acequia stating this fact. *See* § 72-5-24.1(C). In this case, the Applicants did not submit the required affidavit when they submitted the application, but it is undisputed that at the time the application was filed, Storm Ditch did not have any bylaws or regulations requiring approval for any changes or transfers in water rights.

**{3}** The Applicants sought to comply with the statutory notice requirement, NMSA 1978, Section 72-5-4 (2001), by publishing a notice of the application in a local newspaper on three occasions, with the last publication occurring on January 13, 2005. Four days prior to the deadline for filing protests, a friend of Storm Ditch commissioner Lucia Sanchez informed her of the application during a telephone call. Entities other than Storm Ditch filed timely protests with the State Engineer. *See* NMSA 1978, § 72-5-5 (1985) (stating the time for filing protests). Storm Ditch did not file a protest within the time limit.

**{4}** A hearing on the application was convened and then adjourned so that settlement negotiations could take place between the Applicants and the protestants. A little over two years later, the Applicants became aware that they needed to obtain an affidavit from Storm Ditch indicating that Storm Ditch had not adopted any compliance requirements for applicants seeking transfer of water into or out of the acequia, as required by Section 72-5-24.1(C). The administrative proceedings were stayed pending receipt of the affidavit.

**{5}** The Applicants approached Storm Ditch to obtain the affidavit. Storm Ditch refused to provide it and instead filed a motion to intervene in the application proceeding or, in the alternative, to have the application dismissed. In the motion, Storm Ditch argued that the

Applicants' failure to comply with the affidavit requirements of Section 72-5-24.1(C) resulted in a lack of constitutionally required notice to Storm Ditch of a proceeding directly affecting its interests. It also argued that the notice given by telephone to one of its commissioners four days before the protest period ended was insufficient because the four days did not allow enough time to file a protest.

**{6}** The hearing officer from the Office of the State Engineer (OSE) denied Storm Ditch's motion to intervene without holding a hearing. He found that Storm Ditch had in fact received notice of the application when the commissioner received notice by telephone before the protest deadline. He also rejected Storm Ditch's argument that the affidavit requirement in Section 72-5-24.1(C) mandated the Applicants to provide Storm Ditch with actual notice. The hearing officer lifted the stay of the administrative proceedings related to the application because an affidavit from one of Storm Ditch's commissioners, previously attached to the motion to intervene, acknowledged that at the time the application was filed, Storm Ditch had yet to enact a rule or bylaw requiring that changes in water rights be subject to the approval of the commissioners.

**{7}** Storm Ditch filed a motion for a hearing before the State Engineer consistent with NMSA 1978, Section 72-2-16 (1973), for reconsideration of the denial of its motion to intervene because it had not received constitutionally adequate notice of the application. The State Engineer denied Storm Ditch's motion without holding a hearing. He found that no hearing was required because Storm Ditch had failed to file a timely objection or protest and, as a result, it was not a party to the application. He also found that Storm Ditch had no bylaws requiring that any change in water rights be subject to acequia approval and that a Storm Ditch commissioner had actual notice four days before the protest period expired. Storm Ditch received notice of the denial by certified mail.

**{8}** Storm Ditch again filed a request for a hearing with the State Engineer. The OSE hearings unit administrator sent a letter to Storm Ditch informing it that the case was closed because Storm Ditch's initial motion had been heard on the basis of the pleadings and the acequia commissioner's affidavit. The letter also indicated that the State Engineer had determined that any request for a further hearing on the motion should be denied.

**{9}** Storm Ditch appealed to the district court and petitioned for a writ of mandamus requiring the State Engineer to hold a hearing on its earlier motion to intervene, consistent with Section 72-2-16. The State Engineer and the City filed motions to dismiss.

**{10}** The district court dismissed the appeal and the petition for writ of mandamus, finding that Storm Ditch was not a party because it failed to file a timely protest to the application and, as a result, it did not qualify as an aggrieved person for purposes of the hearing requirements in Section 72-2-16. The court further found that, because Storm Ditch was not aggrieved, it had no standing to appeal. Finally, the court found that, under NMSA 1978, Section 72-7-1 (1971), Storm Ditch had failed to file a timely appeal of the State Engineer's initial decision denying Storm Ditch's motion to intervene. This appeal followed.

3

**DISCUSSION**

**{11}** Storm Ditch raises three issues on appeal that we have combined into two issues. First, it claims that, consistent with due process considerations and with the affidavit requirement of Section 72-5-24.1, it was entitled to receive actual notice of the proposed transfer of water rights from the acequia. Asserting that it did not receive proper notice, it contends that it was not required to file its protest within the statutory time limits. Second, Storm Ditch argues that the State Engineer improperly denied its request for a hearing. Because a hearing before the State Engineer is a prerequisite to a district court appeal under Section 72-2-16, Storm Ditch maintains that the district court should have either determined that Storm Ditch's appeal was timely or granted its petition for a writ of mandamus requiring the State Engineer to hold a hearing on the denial of its motion to intervene.

**{12}** The contentions raised by Storm Ditch in its appeal require interpretation of various water law statutes and, as a result, review is de novo. *See Derringer v. Turney*, 2001-NMCA-075, ¶ 8, 131 N.M. 40, 33 P.3d 40 ("Interpretation of a statute is a matter of law, which an appellate court reviews de novo.").

**1.  Storm Ditch Received Adequate Notice of the Application and Was Required to File a Timely Protest**

**{13}** Storm Ditch argues that it should not be bound by the statutory time limits for filing a protest because the affidavit requirement in Section 72-5-24.1 entitles it and all other acequias to actual notice rather than the notice by publication that occurred in this case. To provide context, we first review the relevant portions of the statutory time limits governing protests.

**{14}** Section 72-5-5(A) provides:

> Whenever an application is filed which requires advertisement[,] . . . the advertisement shall state that objections or protests to the granting of the application may be filed with the state engineer within ten days after the last publication of the notice. If objection or protest is timely filed, the state engineer shall advise interested parties, and a hearing shall be held as otherwise provided by statute.

Under this provision, anyone wanting to protest or object to the Applicants' application in the present case had until January 23, 2005, to file an objection or protest. It is undisputed that Storm Ditch failed to do this. Despite its failure to comply with Section 72-5-5(A), Storm Ditch claims that it was excused from filing a timely protest and it was entitled to intervene over two years later because it did not receive proper notice of the application. *Cf. Eldorado at Santa Fe, Inc. v. Cook*, 113 N.M. 33, 36-37, 822 P.2d 672, 675-76 (Ct. App. 1991) (recognizing that due to an erroneous publication notice, the petitioners "failed to receive notice of the application for the permit . . . without any fault or negligence on their

4

part" and holding that the district court properly issued a writ of certiorari because the failure to provide the petitioners with notice and an opportunity to be heard rendered the state engineer's act in issuing the permit either void or voidable), *abrogated on other grounds as recognized by Goodloe v. Bookout*, 1999-NMCA-061, 127 N.M. 327, 980 P.2d 652.

**{15}** Storm Ditch claims that notification by publication was insufficient because it is entitled to actual notice. It argues that it would have received actual notice of the application and filed a timely protest if the Applicants had complied with the requirements of Section 72-5-24.1(C) by seeking an affidavit from the commissioners at the time the Applicants filed the application.

**{16}** Section 72-5-24.1(A) provides in relevant part:

> A. The state engineer shall not approve an application for a change . . . in point of diversion or place or purpose of use of a water right into or out of an acequia or community ditch if the applicant has not complied with the applicable requirement adopted by an acequia or community ditch pursuant to [NMSA 1978, Section 73-2-21(E) (2003)] or [NMCA 1978, Section 73-3-4.1 (2003)].

> B. The applicant for a change described in Subsection A of this [s]ection shall submit with the application to the state engineer documentary evidence provided by the commissioners of the acequia or community ditch of the applicant's compliance with any applicable requirement for the change adopted by the acequia or community ditch pursuant to Subsection E of Section 73-2-21 or Section 73-3-4.1. . . .

> C. If an acequia or community ditch has not adopted an applicable requirement, the applicant shall submit to the state engineer along with the application an affidavit provided by the commissioners of the acequia or community ditch stating this fact.

It is undisputed that Storm Ditch had not adopted any requirements for applicants. As a result, the Applicants in this case should have complied with Section 72-5-24.1(C) and submitted with their application to the State Engineer an affidavit from Storm Ditch stating this fact. The Applicants did not seek this affidavit until more than two years after they submitted their application during the time that proceedings on the application had been suspended for settlement negotiations.

**{17}** Storm Ditch appears to make a two-part argument in connection with the notice issue. First, it claims that the statutory scheme established a property right that entitled it to more than notice by publication. Second, it argues that the Applicants' failure to comply with the affidavit requirement in Section 72-5-24.1(C) should have caused the State Engineer

5

to reject the application. In either case, Storm Ditch maintains, the State Engineer should have dismissed the application, at which time Storm Ditch would be placed in the position it would have been in had it been given proper notice, and it could have intervened to protest the granting of the application. We address each of these sub-arguments in turn.

**a.      Storm Ditch Was Not Entitled to Heightened Notice and, in Fact, it Received Actual Notice**

{18}      Storm Ditch claims that if the Applicants had sought the affidavit as required by Section 72-5-24.1(C), it would have received actual notice of the application. It maintains that it was entitled to this actual notice because it has a property interest at stake in the application proceeding that warranted greater process and protection than what was provided in this case. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) (holding that notice by publication was insufficient to accord due process to the beneficiaries of a trust whose residence was known and who could be deprived of property in the pending legal action); *Uhden v. N.M. Oil Conservation Comm'n*, 112 N.M. 528, 530-31, 817 P.2d 721, 723-24 (1991) (recognizing that a grant of royalty rights in a mineral lease is a grant of real property so the appellant had a property interest in an oil and gas lease and was entitled to personal notice of an administrative proceeding that could directly impact that interest). We disagree for three reasons.

{19}      First, the plain language of Section 72-5-24.1(C) makes no reference to notice. *See Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135 (stating that we consider a statute's plain language in order to "give effect to the Legislature's intent"). Instead, Section 72-5-24.1 appears to be directed at providing the state engineer with assurance that an applicant has met all requirements imposed by acequia bylaws before the state engineer acts on an application to transfer water rights served by an acequia. *See generally* § 72-5-24.1(A), (B). As a result, nothing in the plain language of Section 72-5-24.1 and, more specifically, nothing in Subsection C leads us to conclude that Storm Ditch is entitled to actual notice.

{20}      Second, we are not convinced that any other circumstances entitled Storm Ditch to any notice beyond the notice by publication provided by the Applicants in compliance with Section 72-5-4. Storm Ditch argues that it has a property interest that the Legislature recognized by passing Sections 72-5-24.1 and 73-2-21(E), because these provisions allow acequia commissioners to approve or deny water transfers. *See generally* § 72-5-24.1 (stating in part that an applicant seeking to transfer water from an acequia must show that it has complied with any rules or regulations adopted by the acequia for approval of the transfer); Section 73-2-21(E) (authorizing an acequia to adopt rules or bylaws requiring approval of the acequia commissioners for any "change in point of diversion or place or purpose of use of a water right served by th[at] acequia" but also stating that the acequia commissioners cannot deny approval unless they determine the change would be detrimental to the acequia or its members).

**{21}** Although Sections 72-5-24.1 and 73-2-21(E) authorize an acequia to enact certain requirements before a transfer may be approved, we do not interpret this authorization as conveying a "property right" in the acequia requiring anything more than notice by publication as provided in Section 72-5-4. Storm Ditch had not enacted any rules or bylaws concerning transfer approval, and Storm Ditch therefore had no power to approve or deny the application. As a result, we fail to see why it would be entitled to some form of heightened notice of the application. *See Wilson v. Denver*, 1998-NMSC-016, ¶ 29, 125 N.M. 308, 961 P.2d 153 (recognizing, in an opinion predating the enactment of Section 72-5-24.1, that a ditch association "does not and cannot control the use to which the landowners who are entitled to the water choose to put it" (internal quotation marks and citation omitted)). The only authority Storm Ditch had under the circumstances was to execute an affidavit stating that it had no requirements governing water transfers.

**{22}** Storm Ditch also relies on Section 72-5-5(B) and argues that it is entitled to actual notice because, as a political subdivision, it "has automatic statutory standing to protest." *See* § 72-5-5(B) (stating that "all political subdivisions of the state . . . shall have standing to file objections or protests"). We are not persuaded because Section 72-5-5(B) does not confer special rights on acequias or on any other political entity. Instead, it merely confers standing to file an objection or protest on anyone "substantially and specifically affected by the granting of the application," any agency or division of the [S]tate of New Mexico, and "all political subdivisions of the state and their agencies, instrumentalities and institutions." Section 72-5-5(B). If Section 72-5-5(B) is interpreted as entitling Storm Ditch to actual notice, then any person or entity eligible to file a protest or objection under that Section would also be entitled to actual notice. This interpretation would render meaningless the language of Section 72-5-4 authorizing notice by publication. *See Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 28, 125 N.M. 401, 962 P.2d 1236 (recognizing that statutes must be interpreted so that no part is rendered superfluous or meaningless).

**{23}** Third, even if notice by publication was somehow inadequate, the actual telephone notice received by a Storm Ditch commissioner four days before the protest deadline would be sufficient to satisfy any constitutional requirement. *See Mullane*, 339 U.S. at 314 (holding that notice is sufficient if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). Although Storm Ditch claims that it did not have time to formally protest the application once it had notice, we are not convinced that this excuses its decision to wait over two-and-a-half years before making any attempt to intervene. *See Anthony Water & Sanitation Dist. v. Turney*, 2002-NMCA-095, ¶¶ 4-5, 9-13, 132 N.M. 683, 54 P.3d 87 (rejecting the appellant's argument that it should be excused from strict compliance with the service by publication requirements of Section 72-7-1 because compliance within the statutory time period would be too difficult).

**b.     The Alleged Deficiency in the Application Did Not Provide Storm Ditch with an Additional Remedy**

**{24}** Storm Ditch claims that the Applicants' failure to seek an affidavit at the proper time in compliance with Section 72-5-24.1(C) should result in dismissal of the application and the dissent agrees with this argument. Storm Ditch argues that the State Engineer should have rejected the application before the Applicants published notice. It relies on NMSA 1978, Section 72-5-3 (1941), which provides in part that if an "application is defective as to form, . . . it shall be returned with a statement of the corrections, amendments or changes required, within thirty days after its receipt, and sixty days shall be allowed for the refiling thereof." Storm Ditch maintains that if the application had been rejected, the Applicants would have been required to obtain the affidavit required by Section 72-5-24.1(C), Storm Ditch would have received actual notice of the application, and Storm Ditch could have filed a timely protest.

**{25}** We are not persuaded. As we stated above, the Applicants' failure to request the affidavit at an earlier point did not deprive Storm Ditch of notice as required by Section 72-5-4. Notice by publication was adequate, and Storm Ditch had actual telephone notice through its commissioner. Any deficiency in the application that the State Engineer allegedly overlooked could have been raised in a timely filed protest or objection to the application, but Storm Ditch failed to file such a protest within the statutory time limits.

**{26}** Storm Ditch also relies on an administrative regulation that provides in part that the state engineer should reject and preclude publication of an application that fails to comply with the applicable requirements of Section 72-5-24.1. *See* 19.26.2.12(B) NMAC (1/31/2005). But as noted by the hearing examiner when he rejected Storm Ditch's motion to intervene, that regulation was not in effect at the time the Applicants submitted the application or when notice of the application was published in a local newspaper. Therefore, that regulation does not apply in this case. *See Howell v. Heim*, 118 N.M. 500, 506, 882 P.2d 541, 547 (1994) (stating that statutes and regulations are presumed to "apply prospectively absent a clear intention to the contrary").

**{27}** In summary, the Applicants complied with the statutory notice provisions contained in Section 72-5-4 by publishing an accurate notice on three occasions. As a result, Storm Ditch received adequate notice. The district court properly determined that Storm Ditch's objection to the application was too late and that the State Engineer appropriately denied its motion to intervene.

## 2. Storm Ditch Was Not Entitled to a Hearing Under Section 72-2-16

**{28}** Storm Ditch argues that the district court erroneously determined that its appeal was untimely. The district court determined that Storm Ditch should have filed its notice of appeal within thirty days of its receipt of the State Engineer's order denying its motion for a hearing, as required by Section 72-7-1(B) (stating that "[a]ppeals to the district court shall be taken by serving a notice of appeal upon the state engineer . . . within thirty days after receipt by certified mail of notice of the decision, act or refusal to act"). Storm Ditch claims that it could not file a notice of appeal within the required time limit because Section 72-2-16

states that "[n]o appeal shall be taken to the district court until the state engineer has held a hearing and entered his decision in the hearing." As a result, it contends that the district court should have either deemed its appeal to be timely or granted its motion for a writ of mandamus requiring the State Engineer to hold a hearing on the denial of its motion to intervene. We disagree for the following reasons.

### a.      Storm Ditch Was Not Entitled to a Hearing

{29}      Storm Ditch appears to argue that because it was entitled to a hearing on its motion to intervene and because the State Engineer improperly denied its request for a hearing, its appeal to the district court should be deemed timely. We are not persuaded by Storm Ditch's underlying argument that it was entitled to a hearing.

{30}      Storm Ditch bases its argument on the premise that it was aggrieved by the State Engineer's decision denying its motion to intervene without holding a hearing. As a result, it maintains that Section 72-2-16 required the State Engineer to grant it a hearing. The relevant part of Section 72-2-16 provides:

> The state engineer may order that a hearing be held before he enters a decision, acts or refuses to act. If, without holding a hearing, the state engineer enters a decision, acts or refuses to act, *any person aggrieved* by the decision, act or refusal to act, is entitled to a hearing, if a request for a hearing is made in writing within thirty days after receipt by certified mail of notice of the decision, act or refusal to act.

 (Emphasis added.)

{31}      We have already determined that Storm Ditch was properly notified of the application proceedings when the Applicants complied with the publication requirements in Section 72-5-4 and when a Storm Ditch commissioner received notice of the application by telephone. As a result, Storm Ditch waived the right to a hearing in this case by failing to file a timely protest. *See D'Antonio v. Garcia*, 2008-NMCA-139, ¶¶ 9-10, 145 N.M. 95, 194 P.3d 126 (holding that the defendant waived his right to a post-judgment hearing pursuant to Section 72-2-16 by failing to (1) respond to a summary judgment motion, (2) comply with the OSE scheduling order, (3) make a timely request for a post-judgment hearing, or (4) appeal to the district court pursuant to Section 72-7-1), *cert. granted*, 2008-NMCERT-010, 145 N.M. 524, 201 P.3d 855; *see also Bogan v. Sandoval Cnty. Planning & Zoning Comm'n*, 119 N.M. 334, 342, 890 P.2d 395, 403 (Ct. App. 1994) (holding that landowners who had received proper notice could not appeal the decision of the zoning board to district court because, even though possibly aggrieved, they had failed to challenge the decision at the administrative level).

{32}      We are also unpersuaded by Storm Ditch's reliance on *Derringer* in support of its argument that it is entitled to a hearing. In that case, the state engineer denied the plaintiff's

application for a permit to acquire water rights and granted summary judgment to the other party having an interest in the water. 2001-NMCA-075, ¶ 3. The plaintiff initially waived a hearing on the summary judgment motion, but after the state engineer entered its order, the plaintiff requested a post- judgment hearing under Section 72-2-16, which was denied. *Derringer*, 2001-NMCA-075, ¶ 4. This Court reversed, holding that the plaintiff was entitled to a post-judgment hearing before the state engineer because he was a person aggrieved by an adverse decision of the state engineer entered without a hearing. *Id.* ¶¶ 10-16. In *Derringer*, unlike the situation in this case, the plaintiff was the applicant, not a person seeking to object to an application.

**b.      Storm Ditch Was Not Entitled to a Writ of Mandamus**

{33}    Storm Ditch claims that it was entitled to a writ of mandamus requiring the State Engineer to hold a hearing before denying its motion to intervene. We disagree.

{34}    "Mandamus lies only to force a clear legal right against one having a clear legal duty to perform an act and where there is no other plain, speedy and adequate remedy in the ordinary course of law." *Brantley Farms v. Carlsbad Irrigation Dist.*, 1998-NMCA-023, ¶ 16, 124 N.M. 698, 954 P.2d 763; *see* NMSA 1978, § 44-2-5 (1915) ("The writ shall not issue in any case where there is a plain, speedy and adequate remedy in the ordinary course of law."). Mandamus is only appropriate "to compel the performance of a statutory duty [if] that duty is clear and indisputable." *Brantley Farms*, 1998-NMCA-023, ¶ 16.

{35}    We have already determined that Storm Ditch was not entitled to a hearing under Section 72-2-16 on the denial of its motion to intervene because it waived that right by failing to file a timely protest under Section 72-5-5. *See Garcia*, 2008-NMCA-139, ¶¶ 9-10. Therefore, the State Engineer did not have a "clear and indisputable" duty to conduct a hearing on Storm Ditch's motion, *Brantley Farms*, 1998-NMCA-023, ¶ 16.

**CONCLUSION**

{36}    For the foregoing reasons, we affirm the order of the district court dismissing Storm Ditch's appeal and denying its petition for a writ of mandamus.

{37}    **IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**I CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**

**TIMOTHY L. GARCIA, Judge (dissenting).**

**GARCIA, Judge (dissenting)**

**{38}** I respectfully dissent in this case. Storm Ditch argues that the State Engineer was statutorily required to reject the original application because the Applicants failed to comply with the statutory obligations set forth in Sections 72-5-3 and 72-5-24.1(C). *See Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 37, 147 N.M. 583, 227 P.3d 73 ("[W]hen a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." (internal quotation marks and citation omitted)). Both of these statutory sections utilize the mandatory language "shall" when dealing with the obligations placed upon the Applicants. *See Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 22, 146 N.M. 24, 206 P.3d 135 ("It is widely accepted that when construing statutes, 'shall' indicates that the provision is mandatory, and we must assume that the Legislature intended the provision to be mandatory absent a[] clear indication to the contrary."). Section 72-5-3 states that "[i]f the application is defective as to form, . . . it shall be returned with a statement of the corrections, amendments or changes required[.]" Section 72-5-24.1(C) requires that the Applicants "shall submit to the state engineer along with the application an affidavit provided by the commissioners of the acequia or community ditch."

**{39}** Because the Applicants failed to submit the required affidavit with their original application, the mandatory language required the application to be rejected by the State Engineer and returned to the Applicants for correction and refiling. This application procedure was not followed, and the majority failed to establish a proper basis for disregarding this statutory requirement. As a result, the Applicants should have been required to restart the application process anew when they failed to submit the required affidavit, and their application should not have been processed or approved. The secondary issues of notice and publication only apply to a correctly filed application. These secondary issues need not be reached for a defective application that is statutorily required to be rejected and returned for refiling. As a result, I would have reversed and remanded the approval of the application and required the Applicants to refile a new application with the State Engineer.

 

**TIMOTHY L. GARCIA, Judge**

**Topic Index for *Storm Ditch v. D'Antonio*, No. 29,778**

| AL | ADMINISTRATIVE LAW AND PROCEDURE |
|----|----------------------------------|
| AL-AA | Administrative Appeal |
| AL-DU | Due Process |
| AL-HR | Hearings |
| AL-LI | Legislative Intent |

| | |
|---|---|
| AL-NO | Notice |
| AL-SR | Standard of Review |
| AL-TM | Timeliness |
| | |
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-IT | Intervention |
| CP-NO | Notice |
| CT-SD | Standing |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-DP | Due Process |
| | |
| **GV** | **GOVERNMENT** |
| GV-SE | State Engineer |
| | |
| **NR** | **NATURAL RESOURCES** |
| NR-WL | Water Law |
| | |
| **RE** | **REMEDIES** |
| RE-WM | Writ of Mandamus |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |