IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMSC-040

Filing Date: August 3, 2010

Docket No. 31,750

DONALD E. KILGORE AND
CAROLE A. KILGORE,

      Plaintiffs-Petitioners,

v.

FUJI HEAVY INDUSTRIES LTD.,
TAKATA CORPORATION AND TAKATA
SEAT BELTS INC.,

      Defendants-Respondents.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Stephen D. Pfeffer, District Judge**

Comeau, Maldegen, Templeman & Indall, L.L.P.
Michael R. Comeau
Wesley Grey Handy
Sharon Horndeski
Santa Fe, NM

Peters & Lister, P.C.
Darrel Peters
Lathrup Village, MI

for Petitioners

Bowman and Brooke, L.L.P.
Thomas M. Klein
Phoenix, AZ

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Patrick M. Shay
Albuquerque, NM

for Respondents Fuji Heavy Industries Ltd.
and Takata Corporation

Bowman and Brooke, L.L.P.
David R. Kelly
Minneapolis, MN

Atkinson, Thal & Baker, P.C.
Douglas Arthur Baker
Albuquerque, NM

for Respondent Takata Seat Belts Inc.

**OPINION**

**MAES, Justice.**

**{1}**     In this appeal, we reconsider and clarify the "presumption of prejudice" that attaches to extraneous juror communications.  After reviewing New Mexico case law in light of United States Supreme Court precedent, we conclude that the party moving for a new trial based on extraneous juror communications bears the burden to prove that (1) material extraneous to the trial actually reached the jury, (2) the extraneous material relates to the case being tried, and (3) it is reasonably probable that the extraneous material affected the jury's verdict or a typical juror.  We further conclude that a remand for an evidentiary hearing, rather than a new trial, typically is the appropriate remedy in these cases.  Because the affidavits submitted by Donald and Carole Kilgore (Plaintiffs) were sufficient to establish that extraneous material related to the case actually reached one of the jurors in the case, we remand this case to the trial court for an evidentiary hearing in which Plaintiffs will have an opportunity to prove a reasonable probability of prejudice.

**FACTS AND PROCEDURAL HISTORY**

**{2}**     On May 19, 2000, Mr. Kilgore was driving a 1998 Subaru Legacy Outback on Highway 84 near Tierra Amarilla, New Mexico.  His seven-year-old granddaughter, Emily Walters, was seated beside him in the passenger seat, and his wife, Mrs. Kilgore, was seated behind him in the backseat.  Mr. Kilgore lost control of the vehicle, which rolled down an embankment and landed on its roof.  Both Mr. Kilgore and Walters ended up hanging upside down suspended by their seat belts, but Mrs. Kilgore was found lying on the interior roof of the car, unrestrained.  Mrs. Kilgore sustained serious and permanent physical injuries in the accident, which rendered her a ventilator-dependent quadriplegic.

**{3}** Plaintiffs sued Fuji Heavy Industries, the designer and manufacturer of the vehicle, and Takata Corporation and Takata Seat Belts, Inc.,[1] the designer and manufacturer of the vehicle's seat belt buckle system, for negligence, breach of warranty, product liability, unfair practices, and loss of consortium. Essentially, Plaintiffs claimed that the vehicle's seat belt buckle system had been designed, tested, and manufactured improperly, resulting in the risk of accidental, inadvertent, or unintentional unbuckling during a crash or rollover. The jury entered a special verdict in favor of Defendants, and the trial court rendered judgment accordingly.

**{4}** Plaintiffs subsequently filed a motion for a new trial, claiming, in relevant part, that

> Plaintiffs were presumptively prejudiced during trial by juror misconduct, in that a member of the impaneled jury not only failed to disclose during voir dire that her brother is employed as a Subaru mechanic, but further personally obtained the advice of the owner of the Subaru repair garage as to whether seatbelts were prone to inadvertent unbuckling.

In support of their motion, Plaintiffs filed an affidavit by Gregory G. Scott, a paralegal employed by Plaintiffs' counsel. Scott averred that after the conclusion of the trial he contacted Juror Marie Millie Valdivia to inquire about the reasons for her verdict.

> [Juror Valdivia] said that the [Plaintiffs] had definitely proved that the seat belt buckle could be easily opened with various body parts but there was not enough evidence that the buckle could open in real accidents and therefore she felt the buckle was not defective. [Juror Valdivia and Scott] talked for a few more minutes but she was reluctant to say anything further. She said that her life was very busy and that she did not want to be contacted any further about the case.

**{5}** Scott subsequently learned that Juror Valdivia's brother, Michael Lucero, worked for a Subaru repair shop, and that Juror Valdivia had engaged in a conversation with the owner of the shop, Michael Griego, in which Griego "told [Juror] Valdivia that he had never heard of a Subaru seat belt buckle opening in an accident." Scott contacted Griego, who confirmed the conversation and completed an affidavit describing its contents. However, Scott made no further attempt to contact Juror Valdivia regarding the conversation because she "had told [him] that she did not want to be contacted any further about the case."

**{6}** Griego's affidavit, which was submitted in support of Plaintiffs' motion for a new trial, provides as follows:

---

[1] We hereinafter refer to Fuji Heavy Industries, Takata Corporation, and Takata Seat Belts, Inc. collectively as Defendants.

The affiant, Michael Griego, first being duly sworn deposes and says as follows:

1. My name is Michael Griego. I am an adult and I am competent to make this affidavit. The facts stated in this affidavit are true and are based upon my own personal knowledge.
2. I read an article in the newspaper about the trial in Santa Fe in which a woman was suing Subaru because she was paralyzed in a rollover accident because her seat belt came off. I believe the article was in September of this year.
3. I am the owner of Mike's Garage at 1501 5th St. Santa Fe, New Mexico. My shop only works on Subaru vehicles. Michael Lucero is an employee of my business.
4. Marie Millie Valdivia is Michael Lucero's sister.
5. Prior to my seeing the newspaper article about the Subaru trial, Ms. Valdivia and I had a conversation. She told me that she was a juror on the Subaru trial. I told her that I had never heard of any incident where a Subaru seat belt buckle had come open accidentally. I told her that I had never heard of that happening.
6. During the conversation, she said to me, at least twice, that she was not supposed to be talking to me about the case.

Plaintiffs argued that Scott's and Griego's affidavits "establish that [Juror] Valdivia received extraneous information" and that, under New Mexico law, "[t]he Court must therefore presume prejudice" and grant Plaintiffs' motion for a new trial.

**{7}** Plaintiffs requested a hearing on their motion for a new trial pursuant to the local rules of the first judicial district. *See* LR1-Form A (Request for Hearing). Additionally, in a cover memorandum accompanying their motion for a new trial, Plaintiffs alerted the trial court to "the possible need for an evidentiary hearing on the juror misconduct issue." Approximately one month later Plaintiffs filed a second request for a hearing on their motion for a new trial.

**{8}** The trial court denied Plaintiffs' motion for a new trial without conducting an evidentiary hearing, finding that "[n]othing has been presented to the Court in the [m]otion which convinces the Court that a new trial should be granted." Plaintiffs appealed from the judgment of the trial court to the Court of Appeals, which determined that the affidavits submitted by Plaintiffs were insufficient to raise a presumption of prejudice under New Mexico law. *Kilgore v. Fuji Heavy Indus., Ltd.*, 2009-NMCA-078, ¶ 24, 146 N.M. 698, 213 P.3d 1127. The Court noted that Griego's affidavit was insufficient to establish juror misconduct, because the facts set forth in the affidavit failed to demonstrate that Juror Valdivia initiated a conversation "with another person in an attempt to obtain information

4

relevant to the case contrary to the instructions of the court." *Id.* ¶ 12. The Court further noted that Griego's affidavit was insufficient to establish jury tampering, because there was no evidence to indicate that Griego purposefully initiated contact with Juror Valdivia in an attempt to influence her vote. *Id.* ¶ 12. Additionally, the Court observed that "[Griego's] statement seems almost inconsequential in comparison to the substantial testimony at trial, including expert testimony, relating to whether the buckle was negligently designed or was defective and how the buckle may have opened." *Id.* ¶ 28. Accordingly, the Court held that Plaintiffs had failed to "sustain their burden to preliminarily show there was a reasonable likelihood that the information would have an effect on the verdict or even on a typical juror" and affirmed the trial court's denial of Plaintiff's motion for a new trial. *Id.* ¶ 31.

**{9}** Because Plaintiffs had failed to make the required preliminary showing, the Court further held that "the [trial] court was not required to conduct an evidentiary hearing or to otherwise investigate further." *Id.* ¶ 32. Additionally, the Court concluded that Plaintiffs had failed to request an evidentiary hearing "with any degree of specificity" sufficient to "alert the [trial] court that Plaintiffs wanted an evidentiary hearing specifically on the juror-misconduct issue." *Id.* ¶ 33, 35. The Court recognized that "the [trial] court has a duty in the appropriate case to conduct such an evidentiary hearing," but was "not persuaded that this is the appropriate case or that the court abused its discretion when it did not schedule an evidentiary hearing or otherwise investigate further on the juror-misconduct issue." *Id.* ¶ 36.

**{10}** We granted Plaintiffs' petition for writ of certiorari pursuant to NMSA 1978, Section 34-5-14(B) (1972) and Rule 12-502 NMRA, to determine whether the Court of Appeals properly applied "the 'presumption of prejudice' attaching to improper juror communications established by this Court's precedents and *Remmer v. United States*, 347 U.S. 227 (1954)." *Kilgore v. Fuji Heavy Indus., Ltd.*, 2009-NMCERT-007, 147 N.M. 363, 223 P.3d 360.

**DISCUSSION**

**{11}** "By the beginning of this century, if not earlier, the near-universal and firmly established common-law rule in the United States flatly prohibited the admission of juror testimony to impeach a jury verdict." *Tanner v. United States*, 483 U.S. 107, 117 (1987); *see Skeet v. Wilson*, 76 N.M. 697, 699, 417 P.2d 889, 890 (1966) ("New Mexico has long been aligned with those courts which deny the right to a new trial based alone on affidavits or statements of jurors presented after the jury has been discharged."). However, an exception to this rule has been recognized "in situations in which an 'extraneous influence' was alleged to have affected the jury." *Tanner*, 483 U.S. at 117 (citation omitted).

**{12}** Rule 11-606(B) NMRA, which codified the common law rule regarding the competency of jurors to testify as witnesses, provides that

> a juror may not testify as to any matter or statement occurring during the
> course of the jury's deliberations or to the effect of anything upon that or any

5

other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form.

"Thus, a juror may testify on the very limited circumstances of whether extraneous prejudicial information was improperly before the jury. Otherwise, the rule prohibits a juror from testifying as to any matter or statement made during the course of deliberations or to the juror's mental processes." *State v. Mann*, 2002-NMSC-001, ¶ 18, 131 N.M. 459, 39 P.3d 124.

**{13}** "[T]he underlying issue in cases involving extraneous information is a defendant's right to a fair and impartial jury." *Id.* ¶ 27; *see also State v. McCarter*, 93 N.M. 708, 711, 604 P.2d 1242, 1245 (1980) (noting that the "presumption of prejudice [was] intended to be guardian to the rights of confrontation and cross-examination"). Accordingly, "[u]nauthorized communications to the jury in state courts must be judged by the federal requirements of due process." *Mann*, 2002-NMSC-001, ¶ 19 (internal quotation marks and citation omitted).

**{14}** We therefore begin our analysis with United States Supreme Court precedent. In *Remmer*, someone approached the jury foreman during the petitioner's trial and informed him that "he could profit by bringing in a verdict favorable to the petitioner." 347 U.S. at 228. The Federal Bureau of Investigation conducted an investigation into the incident and determined that the comment "was made in jest, and nothing further was done or said about the matter." *Id.* The petitioner did not learn of the incident until after the jury's verdict, at which time the petitioner filed a motion for a new trial and request for a hearing, claiming that he had been deprived of a fair trial. *Id.*

**{15}** The United States Supreme Court held that

> [i]n a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of the known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Id.* at 229. Because it was unclear on the record "what actually transpired, or whether the incidents that may have occurred were harmful or harmless," the Court reversed the

6

petitioner's conviction and remanded the case to the trial court for a hearing, in which all interested parties must be permitted to participate, to "determine the circumstances [surrounding the communication], the impact thereof upon the juror, and whether or not it was prejudicial." *Id.* at 229-30.

**{16}** In *Smith v. Phillips*, the Court clarified that the remedy for allegations of jury tampering, misconduct, or bias is not an automatic new trial, but rather a "hearing in which [the moving party] has the opportunity to prove actual bias." 455 U.S. 209, 215 (1982). The Court explained that *Remmer* and its progeny

> demonstrate that due process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as *voir dire* and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Such determinations may properly be made at a hearing . . . .

*Id.* at 217.

**{17}** In *United States v. Olano*, 507 U.S. 725 (1993), "the United States Supreme Court . . . distanced itself [even further] from the *Remmer* presumption of prejudice." *Mann*, 2002-NMSC-001, ¶ 36. In that case, the defendants claimed that the presence of alternate jurors during jury deliberations was plain error, which required a new trial. *Olano*, 507 U.S. at 727. The United States Supreme Court rejected the defendants' claim that they were entitled to an automatic presumption of prejudice, explaining that the Court "generally [has] analyzed outside intrusions upon the jury for prejudicial impact." *Id.* at 738. The Court noted that, although "[t]here may be cases where an intrusion should be presumed prejudicial, . . . a presumption of prejudice as opposed to a specific analysis does not change the ultimate inquiry: Did the intrusion affect the jury's deliberations and thereby its verdict?" *Id.* at 739. Because the defendants had failed to request a hearing or to make a specific showing of prejudice, the Court held that they were not entitled to a new trial. *Id.* at 739-40.

**{18}** In light of *Smith* and *Olano*, various jurisdictions have concluded that *Remmer*'s automatic presumption of prejudice no longer applies to cases involving extraneous juror communications. *See, e.g.*, *United States v. Williams-Davis*, 90 F.3d 490, 497 (D.C. Cir. 1996) (rejecting *Remmer*'s automatic presumption of prejudice and holding that the trial court has discretion "to inquire whether any particular intrusion showed enough of a 'likelihood of prejudice' to justify assigning the government a burden of proving harmlessness"); *United States v. Pennell*, 737 F.2d 521, 532 (6th Cir. 1984) ("In light of

*Phillips*, the burden of proof rests upon a defendant to demonstrate that unauthorized communications with jurors resulted in actual juror partiality. Prejudice is not to be presumed."); *People v. Wadle*, 97 P.3d 932, 935 (Colo. 2004) (en banc) (rejecting *Remmer*'s automatic presumption of prejudice and, instead, adopting an objective test that "eschews rebuttable presumptions that are conclusive in effect" (internal quotation marks and citation omitted)); *State v. Harris*, 859 A.2d 364, 432 (N.J. 2004) ("*Remmer* created a prophylactic rule whose purpose was to protect the impartiality of the jury. It does not follow that any deviation from its suggested measures constitutes a violation of a defendant's right to an impartial jury. If that right remains protected, the alleged violation is harmless."). We take this opportunity "to reconcile existing New Mexico precedent with this more recent articulation by the Supreme Court." *Mann*, 2002-NMSC-001, ¶ 36.

**{19}** A review of our case law reveals that, like the United States Supreme Court, the courts of this state have refined and narrowed the presumption of prejudice over time. First, the presumption of prejudice is not automatic in nature; rather, the party moving for a new trial bears the burden to "'make a preliminary showing that movant has competent evidence that material extraneous to the trial actually reached the jury.'" *State v. Sena*, 105 N.M. 686, 688, 736 P.2d 491, 493 (1987) (quoting *State v. Doe*, 101 N.M. 363, 366, 683 P.2d 45, 48 (Ct. App. 1984)); *see also Mann*, 2002-NMSC-001, ¶ 19 (holding that the party seeking a new trial "must make an affirmative showing that some extraneous influence came to bear on the jury's deliberations" (internal quotation marks and citation omitted)). Notably, not all extraneous material is presumed to be prejudicial—only extraneous material that relates to the case being tried is sufficient to invoke the presumption. *State v. Rivera*, 1997-NMCA-102, ¶ 12, 124 N.M. 211, 947 P.2d 168 (holding that extraneous information, which is unrelated to the case being tried, is not prejudicial); *see also State v. Jojola*, 2006-NMSC-048, ¶ 6, 140 N.M. 660, 146 P.3d 305 (holding that a communication between the judge and juror, which is unrelated to the case being tried, is not improper and prejudicial).

**{20}** Second, as in *Smith* and *Olano*, the appropriate remedy is not a new trial, but rather an evidentiary hearing in which the movant has an opportunity to establish, by competent evidence, "a 'reasonable possibility' or a likelihood that the extrinsic communications or conduct would have an effect upon the verdict or upon a typical juror." *Goodloe v. Bookout*, 1999-NMCA-061, ¶ 20, 127 N.M. 327, 980 P.2d 652 (internal quotation marks and citation omitted) ("[R]ather than stating that courts always presume prejudice, it may be more accurate to state that the threshold question for the trial court is whether the unauthorized conduct creates a presumption of prejudice." (internal quotation marks and citation omitted)); *see also Prudencio v. Gonzales*, 104 N.M. 788, 790, 727 P.2d 553, 555 (Ct. App. 1986) (noting that, after receiving evidence of extraneous juror communications in an evidentiary hearing, "the issue then is whether there is a 'reasonable probability' or a likelihood that extrinsic communications or conduct would have an effect upon the verdict or upon a typical juror"); *Doe*, 101 N.M. at 366, 683 P.2d at 48 (remanding the case for an evidentiary hearing in which "[t]he trial court must determine first whether extraneous information reached the jury. Then the trial court must determine whether the extraneous information prejudiced the jury."). Only after this showing has been made does "the burden

then shift[] to the opposing party to demonstrate that the improper conduct did not have an influential effect upon the jurors." *Prudencio*, 104 N.M. at 790, 727 P.2d at 555. Both the trial court's factual findings and its ruling on the movant's motion for a new trial are reviewed for an abuse of discretion. *Mann*, 2002-NMSC-001, ¶ 17; *Prudencio*, 104 N.M. at 790, 727 P.2d at 555.

**{21}** Under the foregoing framework, the burden is on the movant throughout the proceedings to establish that (1) material extraneous to the trial actually reached the jury, (2) the extraneous material relates to the case being tried, and (3) it is reasonably probable that the extraneous material affected the jury's verdict or a typical juror. The courts of this state have characterized this burden as a "preliminary showing" or "threshold question" necessary to invoke the presumption of prejudice. *See Mann*, 2002-NMSC-001, ¶ 19 ("'preliminary showing'" (quoting *Sena*, 105 N.M. at 688, 736 P.2d at 493 )); *Kilgore*, 2009-NMCA-078, ¶ 20 (making no distinction between the "preliminary-showing requirement" or "threshold-question requirement"); *Goodloe*, 1999-NMCA-061, ¶ 20 ("threshold question"). However, there is nothing "preliminary" or "threshold" about this showing because the ultimate issue in all jury tampering, misconduct, or bias cases is "how the impropriety in question would have affected a hypothetical average jury." 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 606.05[2][b] (2d ed. 2010); *see also Mann*, 2002-NMSC-001, ¶ 20 ("The essence of cases involving jury tampering, misconduct, or bias is whether the circumstance unfairly affected the jury's deliberative process and resulted in an unfair jury"). This is because Rule 11-606(B) "prohibits a juror from testifying as to any matter or statement made during the course of deliberations or to the juror's mental processes," *Mann*, 2002-NMSC-001, ¶ 18, and therefore actual prejudice is impossible to prove or disprove. *See Goodloe*, 1999-NMCA-061, ¶ 20 ("Rebutting the presumption of prejudice is problematic, given that jurors cannot testify whether the improper communication influenced them."). Accordingly, the trial court must employ an objective test, which inquires into the probability of prejudice, to ascertain the impact that the extraneous material had upon the jury.

**{22}** Although our case law has characterized this burden-shifting mechanism as a "presumption of prejudice," it is clear that, in reality, no presumption actually exists, because the burden remains on the moving party throughout the proceedings to prove the ultimate fact in issue, i.e., that there is a reasonable probability that the extraneous material affected the verdict or a typical juror. Accordingly, we hereby disavow any further reference to a "presumption of prejudice" in our case law because, in practice, the burden does not shift to the opposing party to disprove prejudice. Additionally, we clarify that the "probability of prejudice" and "likelihood of prejudice" standards are one and the same, although the term "probability of prejudice" is to be preferred, because it more accurately characterizes the moving party's burden of proof.

**{23}** The question remains, how can the moving party prove and the trial court assess a probability of prejudice at an evidentiary hearing in which the jurors are precluded from testifying about the actual effect that the extraneous material had upon the jury's

9

deliberations or its verdict. To determine whether a probability of prejudice exists, the trial court should consider the following relevant inquiries:

1. The manner in which the extraneous material was received;
2. How long the extraneous material was available to the jury;
3. Whether the jury received the extraneous material before or after the verdict;
4. If received before the verdict, at what point in the deliberations was the material received; and
5. Whether it is probable that the extraneous material affected the jury's verdict, given the overall strength of the opposing party's case.

*See Doe*, 101 N.M. at 366-67, 683 P.2d at 48-49; *see also United States v. Hall*, 85 F.3d 367, 371 (8th Cir. 1996) (holding that, when determining prejudice under the objective test, "relevant considerations include: (1) whether the extrinsic evidence was received by the jury and the manner in which it was received; (2) whether it was available to the jury for a lengthy period of time; (3) whether it was discussed and considered extensively by the jury; (4) whether it was introduced before a jury verdict was reached and, if so, at what point during the deliberations; and (5) whether it was reasonably likely to affect the verdict, considering the strength of the government's case and whether the government's case outweighed any possible prejudice caused by the extrinsic evidence"). Additionally, the trial court should hold an in-court evidentiary hearing in which all interested parties are permitted to participate, *Remmer*, 347 U.S. at 229-30, although in certain rare circumstances, an evidentiary hearing may be conducted in camera, *Mann*, 2002-NMSC-001, ¶ 37 (holding that "[t]he trial court's in camera interviews were within its discretion" because the defendant had waived his right to be present during the juror interviews).

**{24}** With these principles in mind, we turn to the facts of this case to determine whether the trial court properly denied Plaintiffs' motion for a new trial and request for a hearing. The Griego affidavit establishes that the owner of a Subaru repair shop informed one of the jurors in the case that he had "never heard of any incident where a Subaru seat belt buckle had come open accidentally. [He] told her that [he] had never heard of that happening." Although it is unclear from the face of the affidavit who initiated this conversation, it is clear that this information constitutes extraneous material, which actually reached one of the jurors in the case. Accordingly, the Griego affidavit is sufficient to establish that "'material extraneous to the trial actually reached the jury.'" *Sena*, 105 N.M. at 688, 736 P.2d at 493 (quoting *Doe*, 101 N.M. at 366, 683 P.2d at 48).

**{25}** We further conclude that the Griego affidavit is sufficient to establish that the extraneous material was relevant to the case being tried. *See Jojola*, 2006-NMSC-048, ¶ 6; *Rivera*, 1997-NMCA-102, ¶ 12. "Relevant evidence is that which has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *State v. Johnson*, 2010-NMSC-016, ¶ 41, 148 N.M. 50, 229 P.3d 523 (quoting Rule 11-401 NMRA). The

central issue in this case was whether the seat belt buckle system in Plaintiffs' Subaru vehicle had been designed, tested, and manufactured improperly, resulting in an accidental or inadvertent unbuckling during Plaintiffs' automobile accident. As the owner of an automobile repair shop devoted exclusively to Subaru vehicles, Griego was in a unique position to acquire information and experience regarding defects in Subaru vehicles. Griego's statement that he had "never heard of any incident where a Subaru seat belt buckle had come open accidentally" made it less probable that the seat belt buckle system in Plaintiffs' Subaru vehicle was defective. Because Griego's affidavit establishes that Juror Valdivia had been exposed to extraneous material relevant to the case, Plaintiffs were entitled to an evidentiary hearing regarding their claim of juror prejudice.

**{26}** However, the Court of Appeals held that Plaintiffs had waived their right to an evidentiary hearing by failing to ask "the court with any degree of specificity to investigate, to call jurors in for questioning, or to schedule an evidentiary hearing." *Kilgore*, 2009-NMCA-078, ¶ 33. "To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked . . . ." Rule 12-216(A) NMRA. A ruling or decision is fairly invoked if a party's objection or motion is "made with sufficient specificity to alert the mind of the trial court to the claimed error." *State v. Riley*, 2010-NMSC-005, ¶ 24, 147 N.M. 557, 226 P.3d 656 (internal quotation marks and citation omitted). In this case, Plaintiffs filed two formal requests for a hearing on their motion for a new trial and informed the trial court of the "possible need for an evidentiary hearing on the juror misconduct issue." Additionally, Plaintiffs filed two affidavits, which revealed that one of the jurors had been exposed to extraneous material relevant to the case. Under these circumstances, we conclude that "'[t]he trial court has a duty to inquire into the possibility of prejudice'" by conducting an evidentiary hearing. *Sena*, 105 N.M. at 688, 736 P.2d at 493 (quoting *Doe*, 101 N.M. at 366, 683 P.2d at 48).

**{27}** Alternatively, Defendants argue that an evidentiary hearing is unnecessary because Plaintiffs failed to submit any evidence of actual prejudice, despite three months of post-verdict investigation. We note that jurors are not required to cooperate with counsel's post-verdict inquiries and that "[a] subpoena may be necessary for a reluctant witness." *Doe*, 101 N.M. at 366, 683 P.2d at 48. Absent compulsory process and an evidentiary hearing, it may be difficult, if not impossible, for a moving party to prove the circumstances under which the extraneous material was received, how long it was available to the exposed juror, whether the exposed juror communicated the material to the other members of the jury, and whether the jury discussed the extraneous material during its deliberations. Accordingly, no adverse inference can be drawn from Plaintiffs' failure to adduce juror affidavits exhibiting actual prejudice.

**{28}** Plaintiffs claim that the appropriate remedy in this case is a new trial, rather than an evidentiary hearing, because four years have passed since the extraneous juror communication occurred and there is "a great risk that the juror's recollections regarding the impact of the extraneous material would be impaired." *State v. Mann*, 2000-NMCA-088, ¶ 60, 129 N.M. 600, 11 P.3d 564 (Apodaca, J., dissenting in part). We reject this claim

11

because "due process does not require a new trial every time a juror has been placed in a potentially compromising situation. . . . Due process means a jury capable and willing to decide the case solely on the evidence before it . . . ." *Smith*, 455 U.S. at 217. Thus, the appropriate remedy is an evidentiary hearing in which the parties have an opportunity to find out whether "the intrusion affect[ed] the jury's deliberations and thereby its verdict." *Olano*, 507 U.S. at 739; *see Smith*, 455 U.S. at 214; *Remmer*, 347 U.S. at 229-30; *United States v. Vitale*, 459 F.3d 190, 197-200 (2d Cir. 2006); *Doe*, 101 N.M. at 366-67, 683 P.2d at 48-49; *Duran v. Lovato*, 99 N.M. 242, 248, 656 P.2d 905, 911 (Ct. App. 1982). Accordingly, we remand this case for an evidentiary hearing in which Plaintiffs will have an opportunity to prove that there is a reasonable probability that the extraneous material affected the verdict or a typical juror.

**CONCLUSION**

{29}    We conclude that the presumption of prejudice attaching to extraneous juror communications no longer exists under New Mexico law and that an evidentiary hearing, rather than a new trial, typically is the appropriate remedy. Because Plaintiffs successfully established that material extraneous to the trial actually reached the jury and that this extraneous material related to the case being tried, we remand this case for an evidentiary hearing in which Plaintiffs will have an opportunity to prove a reasonable probability of prejudice.

{30}    **IT IS SO ORDERED.**

 

_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**PATRICIO M. SERNA, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**CHARLES C. CURRIER (Pro Tem)**

**Topic Index for *Kilgore v. Fuji Heavy Indus., Ltd.*, Docket No. 31,750**

**CP**           **CIVIL PROCEDURE**
CP-EH        Evidentiary Hearing
CP-MN      Motion for New Trial

**JR**           **JURIES**
JR-IJ         Impartial Jury
JR-IC        Improper Juror Communication
JR-PJ       Propriety of Juror Conduct