This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36713**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**LAYLA D. CORIZ, a/k/a**
**LAYLA D. KESSLER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Jennifer L. Attrep, District Judge**

Hector H. Balderas, Attorney General
Benjamin Lammons, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Works L.L.C.
John A. McCall
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Layla D. Coriz (Defendant) appeals her conviction for aggravated battery against a household member, contrary to NMSA 1978, Section 30-3-16(C) (2008, amended 2018). On appeal, Defendant argues that the district court abused its discretion in denying her motion for a mistrial. Defendant also raises three separate claims of fundamental error based on: (1) the district court's failure to sua sponte voir dire the jury

following Defendant's motion for a mistrial; (2) prosecutorial misconduct; and (3) ineffective assistance of counsel. We affirm.

**BACKGROUND**

**{2}**     Defendant's husband, James Coriz reported that on the evening of November 16, 2015, he entered their home and confronted Defendant about having previously damaged his vehicle and another vehicle he was working on for a customer. According to Coriz, Defendant accused him of caring more about the cars and his garage than he did for her. Defendant then squirted gasoline on Coriz's face and lit him on fire with a cigarette lighter. Coriz was immediately engulfed in flames and ran to the bathroom to put the flames out. Defendant followed Coriz into the bathroom, hit him on the head with the "toilet cover," and then fled. Coriz ran outside and called to his brother for help, who then drove Coriz to an Española hospital. On the way to the hospital, Coriz repeatedly stated, "Carnale, look what she did to me. She did it. She's wanting to kill me. She wants to kill me." By the time they arrived at the hospital, Coriz had gone into shock and was transported to a hospital in Albuquerque, where he was treated for severe burns.

**{3}**     A criminal information charged Defendant with aggravated battery on a household member. Three months prior to trial, Coriz mailed a letter to the district court judge requesting dismissal of the charge against Defendant, claiming that the events of November 16, 2015, were an accident. A jury trial commenced in February 2017. Twelve witnesses testified including Coriz and New Mexico State Police Case Agent Jesse Whittaker. Consistent with his letter of recantation, Coriz testified that the injuries he received on the evening of November 16, 2015, were caused by an accident. The State impeached Coriz's testimony by playing excerpts of his December 9, 2015, recorded interview with Agent Whittaker in which Coriz stated that Defendant "squeezed" gas on his face and lit him on fire with a lighter. Agent Whittaker testified to his participation in the investigation including his interviews with both Defendant and Coriz.

**{4}**     Defendant's recorded interview was also played for the jury. During her interview Defendant admitted to throwing gasoline on Coriz, but claimed that she had thrown the gasoline at his legs not his head and that she didn't think it was going to be that bad.

**{5}**     The jury returned a verdict form along with two unsigned notes. Upon receiving the notes—and before reading the verdict—the district court disclosed to both counsel that "a juror upon returning the verdict stated some discomfort and concern for her safety . . . upon return of the verdict, that certain parties might not be happy with the verdict, and so I have arranged for deputies to escort the jury out of the court house once the verdict is returned."

**{6}**     Shortly thereafter the district court held a second bench conference during which the district court informed both counsel that two unsigned notes were received from the jury. The first note read as follows:

Mr. Coriz is very intimidating. We have met him (accidently) outside of the courtroom. During the proceedings, he has glared at each juror. I want to ensure the safety of each juror.

The second note read:

Four of the jurors witnessed . . . Coriz give [Agent] Whittaker a throat slashing sign while he was on the stand.

Defense counsel moved for a mistrial. The district court concluded the bench conference in order to read the notes into the record and ensure the parties' arguments were made on the record.

{7}     After reading the notes into the record the district court stated that it had not witnessed Coriz's hand gestures. In addition to moving for a mistrial, Defense counsel inquired whether the jury produced the notes before or after reaching the verdict. The district court responded that it did not know, explaining that it had been advised that the jury had reached a verdict about half an hour ago and had just received the notes. Defense counsel stated that he had not seen Coriz's actions during Agent Whittaker's testimony and argued, "It's very difficult to believe that they wrote that note and somehow it didn't affect their decision-making process." The State then disclosed that Agent Whittaker "did inform the [S]tate yesterday that Coriz did make a throat slashing motion at him" and argued that there are no grounds for a mistrial because the jurors are instructed to take into account a witness's manner while testifying. Defense counsel responded that he would normally agree with the State but it is different where jurors are in fear for their physical safety.

{8}     The district court ruled that in the absence of cited authority indicating that some jurors' perception that a witness is threating or intimidating is grounds for a mistrial, it was denying Defendant's motion for a mistrial without prejudice. The district court further stated that Defendant could renew the motion for a mistrial in writing.

{9}     Thereafter, the jury returned to the courtroom and the court read the verdict, finding Defendant guilty of aggravated battery against a household member. The district court polled the jurors who affirmed the verdict, addressed Defendant's presentence confinement, and recessed. Later that afternoon the district court met with both counsel and inquired if the parties wished to seal the records containing the identity of the jurors. The State deferred to the district court. The district court stated that it would not seal the records on its own motion. The district court advised that if the State came across additional information regarding any allegations pertaining to Coriz's conduct during Agent Whittaker's testimony, and upon review of relevant rules, the State could move to seal the records. The State responded that its office was looking into the matter and understood that "there is a video, since the courtrooms are equipped with audio video or just video recording and that the video had been reviewed by our office." Defense counsel advised that he would not be moving to seal the record and the hearing concluded. This appeal followed.

## DISCUSSION

**{10}**     Defendant raises four arguments on appeal. First, Defendant argues that the district court abused its discretion in denying her motion for mistrial because the jury's notes created a presumption of prejudice and the district court did not voir dire the jury. Second, Defendant argues that the district court's failure to sua sponte voir dire the jury amounts to fundamental error. Third, Defendant argues that the State's failure to disclose its knowledge of Coriz's hand gestures to Agent Whittaker prior to revelation in the jury note was prosecutorial misconduct amounting to fundamental error. Fourth, Defendant argues that fundamental error occurred based on ineffective assistance of counsel due to defense counsel's failure to request an evidentiary hearing at trial, failure to file a written motion for mistrial, and failure to request the video of the throat slashing gesture. We address each argument in turn.

**The District Court Did Not Abuse its Discretion in Denying Defendant's Motion for Mistrial**

**{11}**     Defendant argues that the juror notes revealed an unauthorized juror communication which in turn created a presumption of prejudice warranting a mistrial. "We review the denial of a motion for mistral under an abuse of discretion standard." *State v. Stallings*, 2020-NMSC-019, ¶ 62, 476 P.3d 905. A district court abuses its discretion when it acts "in an obviously erroneous, arbitrary, or unwarranted manner[,] *State v. Fry*, 2006-NMSC-001, ¶ 50, 138 N.M. 700, 126 P.3d 516 (internal quotation marks and citation omitted), or "when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Swick*, 2012-NMSC-018, ¶ 68, 279 P.3d 747 (internal quotation marks and citation omitted).

**{12}**     We first address Defendant's contention that any unauthorized communication to the jury is presumptively prejudicial and that a defendant does not bear a burden to establish prejudice. In support of each of these contentions, Defendant relies on *State v. Gutierrez*, 1967-NMCA-024, 78 N.M. 529, 433 P.2d 508. In *Gutierrez* this Court held that "[u]nauthorized communications to the jury in state courts must be judged by the federal requirements of due process." *Id.* ¶ 15. In conformity with *Remmer v. United States*, 347 U.S. 227 (1954), this Court held that "under standards of due process, any unauthorized communication is presumptively prejudicial" and that "the burden is not upon the defendant to establish the existence of prejudice."[1] *Gutierrez*, 1967-NMCA-024, ¶ 16. The State counters that "the presumption of prejudice no longer exists under New Mexico [jurisprudence]" and that as the moving party, Defendant bore the burden of demonstrating prejudice.

---

1In *Remmer*, the United States Supreme Court stated that "[i]n a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." 347 U.S. at 229.

**{13}** In *Kilgore v. Fuji Heavy Industries Ltd.*, our Supreme Court "disavow[ed] any further reference to a 'presumption of prejudice' " and clarified that the presumption of prejudice discussed in *Remmer* does not exist "because the burden remains on the moving party throughout the proceedings to prove the ultimate fact in issue, i.e., that there is a reasonable probability that the extraneous material affected the verdict or a typical juror." *Kilgore*, 2010-NMSC-040, ¶ 22, 148 N.M. 561, 240 P.3d 648. Specifically, the Court stated that the proponent of the mistrial motion bears the burden to "establish that (1) material extraneous to the trial actually reached the jury, (2) the extraneous material relates to the case being tried, and (3) it is reasonably probable that the extraneous material affected the jury's verdict or a typical juror." *Id.* ¶ 21. Thus, Defendant's reliance on *Gutierrez* and *Remmer* for the proposition that unauthorized communication to the jury is presumptively prejudicial and that a defendant does not bear a burden to establish prejudice is unavailing. We now evaluate the district court's denial of Defendant's motion for mistrial within the framework announced in *Kilgore.*

**{14}** As the proponent of the mistrial motion, Defendant bore the burden to show that extraneous material reached the jury. *See id.* ¶ 21. In this case, the jury's notes to the court themselves satisfy Defendant's burden in this regard. The first note explained that members of the jury accidently encountered Coriz outside of the courtroom, that he glared at each juror during the proceedings, and that they found him intimidating. The second note reported that the four jurors witnessed Coriz making a throat slashing gesture to Agent Whittaker during the agent's testimony. The notes identified two instances in which jurors were exposed to communications, albeit non-verbal communications or through misconduct, extraneous to information provided during trial. We next determine whether Defendant satisfied her burden to show that the communications or misconduct were related to her case. *Id.* ¶ 21.

**{15}** When defense counsel moved the district court for a mistrial, he expressed a general disbelief that the extraneous communications did not affect the jury's verdict and asserted that the jurors' fear for their physical safety could influence their deliberations. Indeed, while the State's arguments implied that the communications might go to Coriz's credibility as a witness, Defendant disagreed, stating that the issue was not witness credibility but rather intimidation. Defendant did not argue however, that the extraneous communications had a tendency to make a fact of consequence in this case more or less probable. *See* Rule 11-401 NMRA; *Kilgore*, 2010-NMSC-040, ¶ 21 (stating that the burden is on the movant to establish that the extraneous material relates to the case being tried).

**{16}** In *Kilgore*, the plaintiffs were injured in a car accident. The central issue during trial was whether the seatbelt buckle system in their car had been improperly designed, tested, and manufactured resulting in an accidental or inadvertent unbuckling during the accident. *Id.* ¶¶ 2, 25. Outside of trial, and prior to deliberation, a juror discussed the case with a mechanic who expressed that he had never heard of similar incidents occurring with seatbelts in the type of vehicles at issue. *Id.* ¶¶ 6, 25. In support of their motion for new trial, the plaintiffs attached an affidavit signed by the mechanic attesting to his conversation with the juror. *Id.* ¶ 6. On appeal, our Supreme Court held that the

affidavit was sufficient to show that the extraneous communication was relevant. *Id*. ¶ 25. Specifically, the Court evaluated the mechanic's comments in light of Rule 11-401, regarding relevance, and concluded that the comments "made it less probable that the seat belt buckle system in Plaintiffs' . . . vehicle was defective." *Kilgore*, 2010-NMSC-040, ¶ 25.

**{17}**　In contrast to the affidavit in *Kilgore*, the jury's notes revealing that Coriz glared at each of the jurors during the proceeding and that four jurors saw Coriz make a throat slashing gesture to Agent Whittaker, such that they found Coriz to be intimidating, did not relate to Defendant's aggravated battery on a household member charge. On appeal, Defendant does not develop any arguments regarding the relevance requirement identified in *Kilgore*. We will not develop such arguments for Defendant. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 (This Court "will not search the record for facts, arguments, and rulings in order to support generalized arguments."). Absent some connection between the communications and the issues at trial, Defendant did not meet her burden to show that the communications were relevant. Even if she had, Defendant's claim of prejudice is based entirely on speculation that a juror might have been biased against Defendant. Accordingly, we conclude that the district court properly denied Defendant's motion for mistrial.

**{18}**　To the extent Defendant argues that she was entitled to a mistrial as a result of jury tampering, we disagree. According to Defendant, Coriz engaged in two instances of jury tampering, first, when he made a throat slashing gesture at Agent Whitaker and second, when the jury encountered Coriz outside of the courtroom. "Jury tampering generally refers to private communications between third persons and jurors." *State v. Mann*, 2002-NMSC-001, ¶ 21, 131 N.M. 459, 39 P.3d 124. With regard to the throat slashing gesture, Defendant does not direct us to any authority indicating that a threating gesture—directed to a witness—is considered jury tampering. "We will not consider an issue if no authority is cited in support of the issue, because absent cited authority to support an argument, we assume no such authority exists." *State v. Casares*, 2014-NMCA-024, ¶ 18, 318 P.3d 200. As for the encounter between Coriz and jurors outside of the courtroom, we point out that the jury's note to the district court indicated that the encounter was accidental. Our courts have previously acknowledged that "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Kilgore*, 2010-NMSC-040, ¶ 16 (internal quotation marks and citation omitted). As is the case, "due process does not require a new trial every time a juror has been placed in a potentially compromising situation[.]" *Id.* ¶ 28. Accordingly, we hold that the district court did not abuse its discretion in denying Defendant's motion for a mistrial.

## The District Court Was Not Required to Sua Sponte Voir Dire the Jury

**{19}**　Defendant next contends that the district court should have conducted a sua sponte voir dire of the jury upon receiving the juror notes which, according to Defendant, placed the district court on notice of "possible juror misconduct or tampering during trial" and confirmed "that the jurors felt threatened and their impartiality was compromised."

Because Defendant did not preserve this issue, we review for fundamental error. *See* Rule 12-321(B)(2) NMRA (providing that this Court may consider questions involving fundamental error or fundamental rights of a party even when the issues have not been preserved). "The first step in reviewing for fundamental error is to determine whether an error occurred." *State v. Silva*, 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192. We apply the doctrine of fundamental error only under exceptional circumstances and solely to prevent a miscarriage of justice. *Id.* ¶ 13. Thus, we will only reverse for fundamental error where there is such question of the defendant's guilt that it "would shock the conscience" or where "substantial justice has not been served." *Id.* "Substantial justice has not been served when a fundamental unfairness within the system has undermined judicial integrity." *Id.*

**{20}**   Defendant cites to *State v. Gardner*, 2003-NMCA-107, ¶ 13, 134 N.M. 294, 76 P.3d 47, and *State v. Gallegos*, 2009-NMSC-017, ¶¶ 28-29, 146 N.M. 88, 206 P.3d 993, to support her argument that the district court had a duty to conduct a sua sponte voir dire once the court received the notes from the jury. In *Gardner*, our Supreme Court considered whether the district court abused its discretion in denying a motion for mistrial where a potential juror's comments, during voir dire and in the presence of other possible jurors, indicated bias about the defendant's guilt. 2003-NMCA-107, ¶¶ 3-4. However, in this case, the juror notes did not express an opinion about Defendant's guilt or innocence and instead revealed that the jurors felt intimated by Coriz, based on his conduct towards a testifying witness, and acts of glaring at the jury during the proceedings. Defendant's reliance on *Gardner* is therefore misplaced because unlike the juror comments in *Gardner*—which indicated bias—Defendant's claim of compromise of juror impartiality based on the content of the notes is pure speculation.

**{21}**   Defendant's reliance on *Gallegos* is similarly misplaced. In *Gallegos*, the defendant argued that a mistrial was necessary based on two separate incidents which the defendant alleged may have biased the jury. 2009-NMSC-017, ¶¶ 20-29. In the first instance a juror discreetly signaled the judge during opening arguments and appeared as though she was getting ready to leave the jury box. *Id.* ¶ 20. After conducting individual voir dire of the juror in chambers, the judge excused the juror for cause because the juror revealed that she was physically affected by opening statements and did not believe she could sit through trial. *Id.* The defendant moved for a mistrial, which the district court denied. *Id.* On appeal, this Court affirmed denial of the mistrial motion noting that the defendant did not present any evidence to establish that dismissal of the juror compromised the remaining jurors' impartiality. *Id.* ¶ 23. The defendant in *Gallegos* also argued that comments made by jurors to a bailiff regarding the likelihood of a plea bargain and whether the trial would continue into the following week required that the district court declare a mistrial on its own motion. *Id.* ¶¶ 25-26. In considering the jurors' comments on appeal, this Court stated its belief that the comments at issue were not necessarily indicative of bias or prejudice and acknowledged, "Courts rarely grant a motion for mistrial based on mere equivocal evidence of possible juror bias or prejudice, even with the potential to negatively impact a trial." *Id.* ¶¶ 28-29. Like the comments in *Gallegos*, the notes in this case are not necessarily indicative of bias or impartiality. In the absence of facts showing that the district court was apprised of juror tampering or

juror bias, the district court was not required to sua sponte voir dire the jurors to inquire into tampering or bias.

**{22}** Defendant also cites *Kilgore*, 2010-NMSC-040, ¶ 28. While this case does state that a district court must conduct voir dire where allegations of jury misconduct are made, our reading of *Kilgore* indicates that if a duty to sua sponte voir dire the jury exists, it arises only where the proponent of the mistrial motion has shown that extraneous material relevant to the case being tried reached the jury. *See id.* ¶ 25 (concluding that because the plaintiffs established that a juror had been exposed to extraneous material relevant to the case, they were entitled to an evidentiary hearing). As discussed above, Defendant did not satisfy its burden to show that the extraneous communications were relevant. Absent this showing we cannot say the district court had a duty to sua sponte voir dire the jury and thus failing to do so was not error.

**{23}** To the extent Defendant also argues that the district court should have voir dired the jury because jurors violated their oath when they failed to disclose possible contact with Coriz earlier, Defendant does not cite to any authority or provide substantive analysis in support of this assertion. This Court is not obligated to address undeveloped conclusory arguments. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (stating that appellate courts are under no obligation to review unclear or undeveloped arguments); *see also* Rule 12-318(A)(4) NMRA (requiring arguments in briefs to contain citations to authorities).

**Prosecutorial Misconduct**

**{24}** Defendant also asserts that fundamental error occurred when the State failed to disclose its knowledge of Coriz's gesture during Agent Whittaker's testimony prior to the revelation in the jury's note. "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *State v. Paiz*, 2006-NMCA-144, ¶ 53, 140 N.M. 815, 149 P.3d 579 (internal quotation marks and citation omitted).

**{25}** Defendant posits multiple arguments in support of her assertion including that withholding the information is akin to withholding exculpatory evidence which infringed on her due process rights and that withholding the information hindered her ability to defend against jury tampering. Defendant also vaguely contends that information regarding Coriz's gesture arguably came within the discovery order and the *Brady* rule requiring the State to assert privilege under Rule 11-501(A) NMRA in order to prevent disclosure. Defendant did not provide any substantive analysis of these arguments in her brief in chief and aside from fleeting indirect citations, provided little to no authority in support of her arguments. As we have said, this Court is not obligated to review undeveloped arguments. *Guerra*, 2012-NMSC-014, ¶ 21. This principle is particularly applicable where, as in this case, doing so requires this Court to develop arguments for the parties. *See State v. Flores*, 2015-NMCA-002, ¶ 17, 340 P.3d 622. Furthermore, Defendant argues for the first time in her reply brief that the Rules of Professional Conduct inform this issue. We will not review arguments raised for the first time in a

reply brief. *See State v. Druktenis*, 2004-NMCA-032, ¶ 122, 135 N.M. 223, 86 P.3d 1050. Given these deficiencies, we decline to address whether the State's failure to disclose Coriz's gesture to Agent Whittaker amounts to fundamental error.

**Ineffective Assistance of Counsel**

**{26}** Finally, Defendant argues that her trial counsel was ineffective because he failed to: (1) request an evidentiary hearing to voir dire the jurors about the contents of their notes; (2) file a written motion requesting a mistrial; and (3) failed to request a copy of the video recording of Coriz's throat slashing gesture.

**{27}** "We review claims of ineffective assistance of counsel de novo." *State v. Pitner*, 2016-NMCA-102, ¶ 14, 385 P.3d 665 (internal quotation marks and citation omitted). "[T]here is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Garcia*, 2011-NMSC-003, ¶ 33, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citation omitted). "In order to establish a prima facie case of ineffective assistance of counsel on direct appeal, a defendant must demonstrate that: (1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense." *State v. Bahney*, 2012-NMCA-039, ¶ 48, 274 P.3d 134. "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. Because the record is frequently insufficient to establish whether an action taken by defense counsel was not reasonable or if an error caused prejudice, ineffective assistance of counsel claims are often better addressed in habeas corpus proceedings. *See State v. Arrendondo*, 2012-NMSC-013, ¶ 38, 278 P.3d 517.

**{28}** However, if on direct appeal a defendant makes a prima facie case for ineffective assistance of counsel on the basis of facts in the record, an appellate court can remand to the district court for an evidentiary hearing. *See State v. Crocco*, 2014-NMSC-016, ¶ 14, 327 P.3d 1068. A defendant makes a prima facie case when the defendant produces sufficient evidence to allow the trier of fact to infer the fact at issue and rule in the defendant's favor. *See id.* In this case Defendant has failed to establish a prima facie case of ineffective assistance of counsel.

**{29}** Relying on *Remmer*, Defendant first contends that the jury note reporting their accidental encounter with Coriz outside of the courtroom, was presumptively prejudicial and that counsel's failure to request an evidentiary hearing in order to hold the State to its burden of demonstrating the absence of prejudice, voir dire the jury, and to then argue that under *Remmer*, a mistrial was warranted was ineffective assistance of counsel. In light of our Supreme Court's holding in *Kilgore*, disavowing the presumption of prejudice and clarification that the burden is not on the State to demonstrate the absence of prejudice, counsel was not ineffective for not requesting an evidentiary hearing in order to voir dire the jury and to then renew his motion for a mistrial based on *Remmer. See State v. Chandler*, 1995-NMCA-033, ¶ 35, 119 N.M. 727, 895 P.2d 249

(stating that failing to file a motion that would prove futile does not constitute ineffective assistance of counsel), *modified on other grounds by State v. Vargas*, 2007-NMCA-006, 140 N.M. 864, 149 P.3d 249.

**{30}** Defendant next argues that her trial counsel was ineffective because he failed to file a written motion for a mistrial despite the district court's invitation to do so. However, the district court's invitation to file a written motion for mistrial included a provision that the motion include case law showing that a jury's fear that a complaining witness may not be happy with its verdict warrants a mistrial. In light of the fact that appellate counsel himself cited no relevant authority supporting this very claim, and given our holding that the district court's denial of a defendant's motion for a mistrial was not an abuse of discretion, we cannot say that counsel was ineffective for not filing a motion for mistrial. *See Chandler*, 1995-NMCA-033, ¶ 35.

**{31}** Finally, Defendant contends counsel was ineffective because he failed to request the video of Coriz's throat slashing gesture for review by "the [c]ourt or otherwise." According to Defendant, a review of the video was potentially useful to show its effects on the jurors. There are no facts in the record that would allow us to address this claim. Defendant does not cite to nor is there anything in the record indicating that the recording includes the jurors, or importantly that it included a recording of the jurors reacting to Coriz's throat slashing gesture at all. *See State v. Dartez*, 1998-NMCA-009, ¶ 27, 124 N.M. 455, 952 P.2d 450 (holding that counsel's failure to interview or subpoena the confidential informant was not ineffective assistance in absence of any indication that the confidential informant's testimony would have benefitted the defendant). Therefore, Defendant has failed to establish a prima facie case of ineffective assistance of counsel as to this claim. *See Arrendondo*, 2012-NMSC-013, ¶¶ 38-41 (explaining that where "the record does not contain any evidence that counsel either intentionally or negligently failed to investigate" allegedly key evidence the defendant "failed to establish a prima facie case of ineffective assistance of counsel"). If Defendant believes she can demonstrate ineffectiveness with regard to the recording, she remains free to do so, pursuant to Rule 5-802 NMRA.

**{32}** Accordingly, we hold that Defendant has not made a prima facie case of ineffective assistance of counsel on direct appeal.

**CONCLUSION**

**{33}** For the forgoing reasons, we affirm Defendant's conviction of aggravated battery against a household member.

**{34} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**BRIANA H. ZAMORA, Judge**